THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARVIN GRIFFIN, Defendant-Appellant.

First District (2nd Division)   No. 1—90—2101

Opinion filed April 13, 1993.—Rehearing denied June 7, 1993.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Ann L. Benedek, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Marvin Griffin, Duane Calhoun (Calhoun), and Brian Jackson (Jackson) were charged with eight counts of aggravated criminal sexual assault, two counts of criminal sexual assault, and two counts of aggravated kidnapping, for events occurring on June 13, 1988. The aggravated criminal sexual assault counts included two violations each of the following subsections of section 12—14 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—14): (1) that defendants committed a criminal sexual assault and caused great bodily harm to the victim (section 12—14(a)(2)); (2) that defendants, who were 17 years of age or older, committed a sexual penetration of a victim who was under the age of 13 (section 12—14(b)(1)); (3) that defendants committed a criminal sexual assault and threatened or endangered the life of the victim (section 12—14(a)(3)); and (4) that defendants committed a criminal sexual assault during the commission of another felony (section 12—14(a)(4)). Prior to trial, the State nolprossed the four alleged violations of sections 12—14(a)(3) and (a)(4) as well as the aggravated kidnapping counts. The causes of the three codefendants were severed, and defendant was tried for two counts each of aggravated criminal sexual assault in violation of sections 12—14(a)(2) and (b)(1), as well as for two counts of criminal sexual assault.

The State presented the following evidence at defendant's trial. At approximately 10:30 p.m. on June 13, 1988, the complainant, M.G., a 12-year-old girl, testified that she went to Roy's Food and Liquor Store in Robbins, Illinois, with her 12-year-old cousin R.H. in order to purchase a bottle of soda. After making the purchase, the girls began to walk toward their home about two blocks away when two young men called out to them. M.G. recognized that one of the boys was Calhoun, and R.H. saw that the other was Jackson; the girls knew the men from the Robbins Community Center. While the girls were talking with Calhoun and Jackson, they noticed defendant, whom neither of the girls knew, standing near a brown station wagon parked on the street.

After conversing for several minutes, the men asked the girls if they wanted a ride home, and when they refused and began to walk away, Calhoun and Jackson grabbed M.G.'s arms and threw her into the station wagon. M.G. was forced into the back seat with Calhoun, Jackson was in the front passenger seat, and defendant was driving. At the time, M.G. thought the men were "fooling around" and thus told them to "stop playing."

Defying M.G.'s plea that she be taken home, defendant drove the station wagon to the Woodlawn projects approximately four blocks away. Calhoun tried to remove M.G.'s shirt, and when she resisted, he took off her shoes. M.G. then escaped from the vehicle, and the three men chased after her in the car. As they neared M.G., Calhoun alighted and pulled her back into the vehicle. Defendant then drove away and parked the station wagon on a side street near the Midlothian Turnpike, where Calhoun tore off M.G.'s shorts and underwear and, while striking her on the head, forced her to have vaginal intercourse with him. M.G. continued to resist Calhoun's efforts, but he fought her off and continued to have intercourse with her.

When Calhoun finished sexually assaulting M.G., Jackson joined the two in the back seat and forced her to have intercourse with him as well. Although she again pleaded with the men to leave her alone, Calhoun told her to shut up and continued to pummel her on the head while Jackson was forcing her to have intercourse with him. Defendant remained in the front seat during the entire assault and, although she was screaming loudly, he did nothing to help her.

After Calhoun and Jackson finished sexually assaulting M.G., defendant drove the four toward her aunt's home and stopped on Spaulding Avenue, where they allowed M.G. to leave. She was barefoot and crying, had bruises on her face, and had a lump on her head. Before she left, however, Calhoun told her that if she told anyone about the incident, he would "throw [her] in the canal and that he [would] kill [her] before he go [sic] to jail, because he wasn't going to go jail for nothing [sic] like that."

Meanwhile, R.H. had notified the police that M.G. had been abducted by three men. At about 12:30 a.m., R.H. was talking to Robbins police officer Charles Harris when she noticed the car into which M.G. had been forced pass by. Officer Harris pursued the vehicle driven by defendant, and by the time he apprehended it, M.G. had already been released. Eventually, both M.G. and R.H. arrived at the scene and identified Calhoun, Jackson and defendant as the abductors. M.G. told Officer Harris that she had been sexually assaulted by the men, and he placed them under arrest.

After defendant was taken into custody and read his *Miranda* warnings, he gave a statement to Assistant State's Attorney Terry Takash which was later reduced to writing and read to the jury. In that statement, defendant admitted being in the presence of Calhoun and Jackson when M.G. was sexually assaulted. He stated, however, that he drove the car only while Jackson was sexually assaulting her; but he did admit that he knew that Calhoun had hit the victim and that he had heard him threaten her life. According to his statement, however, Jackson was driving the car when M.G. was released.

After the State rested, defendant presented the character testimony of Constance Moody, who stated that defendant was a peaceful, law-abiding citizen. Finally, defendant took the stand and related substantially the same story that he gave Takash shortly after his arrest. He added, however, that: (1) he thought Calhoun and Jackson were just playing until Jackson began to sexually assault M.G.; in other words, he did not realize that Calhoun was sexually assaulting her; (2) he exited the car while Calhoun was assaulting her; and (3) after Calhoun and Jackson finished sexually assaulting M.G., he got in the back seat with her so they would not hurt her any more.

The jury returned a single general verdict finding defendant guilty of aggravated criminal sexual assault and of criminal sexual assault. The jury's aggravated criminal sexual assault verdict did not indicate upon which count it was based. After denying defendant's posttrial motion and hearing argument in mitigation and aggravation, the court merged the two aggravated criminal sexual assault counts based on section 12—14(b)(1) (age) and the two criminal sexual assault counts into the aggravated criminal sexual assault counts based on section 12—14(a)(2) (bodily harm), and sentenced defendant to two concurrent terms of seven years in the custody of the Illinois Department of Corrections.

I

Defendant asserts that the evidence in this case was insufficient to convict him of aggravated criminal sexual assault and criminal sexual assault based on accomplice liability. In *People v. Sutherland* (1992), 155 Ill. 2d 1, our supreme court had occasion to summarize the standard of review which we must apply to sufficiency of evidence claims. The court stated:

"When faced with a challenge to the sufficiency of the evidence, the relevant inquiry for the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the es-

sential elements of the crime beyond a reasonable doubt. [Citations.] The reviewing courts apply this standard regardless of whether the evidence is direct or circumstantial. [Citations.] This standard of review does not allow the appellate court to 'substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of witnesses [citation].' [Citation.] Therefore, [a reviewing] court will not reverse a criminal conviction unless the evidence is so 'unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt [citation].' [Citation.]" *Sutherland*, 155 Ill. 2d at 17.

A person is legally accountable for the conduct of another when, either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense. (Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c); *People v. J.H.* (1990), 136 Ill. 2d 1, 17, 554 N.E.2d 961, 968.) Our supreme court, in interpreting this section, has endorsed the "common design" principle of accountability, as set forth in *People v. Perez* (1985), 108 Ill. 2d 70, 483 N.E.2d 250:

> " 'Evidence that one voluntarily attaches himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain a conviction as a principal for a crime committed by another in furtherance of the venture. [Citation.] Proof of a common purpose need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of an act by a group, and *the fact that the criminal acts were not committed pursuant to a preconceived plan is not a defense if the evidence indicates involvement on the part of the accused in the spontaneous acts of the group.* [Citation.]' " (Emphasis in original.) *Perez*, 108 Ill. 2d at 82-83, 483 N.E.2d at 255, quoting *People v. Johnson* (1966), 35 Ill. 2d 624, 626, 221 N.E.2d 662, 663.

While a defendant's mere presence at the scene of a crime is insufficient to impose criminal liability (*Johnson*, 35 Ill. 2d at 626, 221 N.E.2d at 663; *People v. Lovelady* (1991), 221 Ill. App. 3d 829, 840, 582 N.E.2d 1217, 1227, *appeal denied* (1992), 143 Ill. 2d 644, 587 N.E.2d 1021), "[a]ctive participation has never been a requirement for the imposition of criminal liability upon the theory of accountability." (*People v. Reid* (1990), 136 Ill. 2d 27, 61, 554 N.E.2d 174, 190; accord *People v. Johnson* (1991), 220 Ill. App. 3d 550, 554, 581 N.E.2d 118,

122.) Instead, courts have looked to the following factors to determine if one can be held responsible for the criminal acts of another: (1) defendant's presence at the scene of the crime without any negative reaction to it; (2) flight from the scene; (3) continued association with the perpetrators after the criminal act; (4) failure to report the incident; (5) acceptance of illegal proceeds from the actual perpetrators which the accused knew did not belong to that person; and (6) subsequent concealment or destruction of evidence. (See *People v. Haynes* (1991), 223 Ill. App. 3d 147, 150, 583 N.E.2d 1177, 1179; *Johnson*, 220 Ill. App. 3d at 554-55, 581 N.E.2d at 122.) Finally, it has been invariably held in this State that a defendant may be held accountable for aggravated criminal sexual assault when he is aware that the offense is being committed by another in his presence and does nothing to dissociate himself from the criminal activity, even if he does not actively participate in the crime. See, *e.g., People v. Tyler* (1979), 78 Ill. 2d 193, 196-97, 399 N.E.2d 975, 977; *People v. Coleman* (1991), 222 Ill. App. 3d 614, 623, 584 N.E.2d 330, 336, *appeal denied* (1992), 144 Ill. 2d 637, 591 N.E.2d 25; *People v. Jones* (1989), 184 Ill. App. 3d 412, 431, 541 N.E.2d 132, 143-44.

▇▇ Applying these principles to the case at bar, it becomes inescapably clear that the jury's finding that defendant was accountable for the actions of Calhoun and Jackson was eminently reasonable. The evidence, when viewed in the light most favorable to the State, not only establishes that defendant did not dissociate himself from the crime after he knew it was being committed in his presence, but also that: (1) he drove the station wagon during the entire incident, including when the victim escaped and was recaptured; (2) he fled the scene with the perpetrators; and (3) he made no attempt to report the crime after its commission. Accordingly, we find that the evidence presented against defendant was indisputably sufficient to support the jury's guilty verdict.

II

Defendant next contends that he was deprived of his right to a fair trial because of certain comments made by the prosecutor during his rebuttal argument. Generally, a prosecutor is given wide latitude in closing argument (*People v. Shum* (1987), 117 Ill. 2d 317, 351, 512 N.E.2d 1183, 1191), and "[b]ecause the trial court is in the best position to determine the prejudicial effect, if any, of a remark made during argument, the character and scope of argument to the jury is left largely to the trial court, and every reasonable presumption must be indulged in that the trial judge has performed his duty and properly

exercised the discretion vested in him." (*People v. Manley* (1991), 222 Ill. App. 3d 896, 907, 584 N.E.2d 477, 486.) Moreover, "[i]n order for a remark to be deemed reversible error, the complained-of remark must have resulted in substantial prejudice to the accused, such that the verdict would have been different had it not been made." (*People v. Morgan* (1991), 142 Ill. 2d 410, 453, 568 N.E.2d 755, 770, *rev'd on other grounds* (1992), 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222; *People v. Malone* (1991), 211 Ill. App. 3d 628, 636, 570 N.E.2d 584, 590, *appeal denied* (1991), 141 Ill. 2d 660, 584 N.E.2d 135.) In making that determination, we must consider the content of the language used, its relation to the evidence, and the effect of the argument on defendant's right to a fair and impartial trial. *Manley*, 222 Ill. App. 3d at 908, 584 N.E.2d at 487.

We hold that defendant has waived any objection to the prosecutor's rebuttal argument for the reason that he failed to include this allegation of error in his post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129-30.) At any rate, as we discuss below, we hold that any comments made by the prosecutor, even were we to consider them plain error, as defendant requests, would not amount to reversible error. See *Morgan*, 142 Ill. 2d at 456-57, 568 N.E.2d at 771.

■ Defendant first claims that the prosecutor impermissibly shifted the burden of proof to him by stating that he had the "same subpoena power that we do [and h]e didn't bring [certain witnesses] in." Although the State may not comment on a defendant's failure to call witnesses (*People v. Holman* (1988), 103 Ill. 2d 133, 151, 469 N.E.2d 119, 128), such comments are permitted when they are made solely in response to defense counsel's own reference to the State's failure to call those witnesses. (*People v. Richardson* (1988), 123 Ill. 2d 322, 355, 528 N.E.2d 612, 625.) Here, defendant's attorney expressly criticized the prosecutor during his closing argument for not calling certain witnesses and for failing to present expert testimony to support the State's theory of the case, thus implying that the State was concealing material witnesses and withholding relevant evidence. Since the prosecutor was merely responding to such insinuations, we hold that no error was committed.

Defendant also asserts that the prosecutor improperly diluted the reasonable doubt standard (see *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432) by stating that "the burden in this case is beyond a reasonable doubt. It is not beyond one reasonable doubt." We fail to see how this isolated comment could have prejudiced defendant; we therefore hold that any error committed in making this state-

ment was harmless. See *People v. Bell* (1992), 234 Ill. App. 3d 631, 638, 600 N.E.2d 902, 908.

Defendant next complains that the prosecutor made the following remarks which were not based on the evidence: (1) that defendant actually penetrated the victim; (2) that Robbins' police officers are not well trained; and (3) that the victim came from an impoverished family. It is axiomatic that a prosecutor may not make comments during argument which are unsupported by the evidence. (*People v. Mullen* (1990), 141 Ill. 2d 394, 405-06, 566 N.E.2d 222, 226-28.) Although we agree with defendant that these remarks were not based on the evidence or upon any reasonable inference therefrom, we find that the outcome would not have been different had the comments not been made. (See *People v. Bivens* (1987), 163 Ill. App. 3d 472, 484, 516 N.E.2d 738, 745, *appeal denied* (1987), 119 Ill. 2d 561, 522 N.E.2d 1248.) Accordingly, we hold that the improper comments were harmless beyond a reasonable doubt, especially in light of the fact that the jury was instructed to disregard any comments by either counsel during argument which were not based on the evidence. See *Manley*, 222 Ill. App. 3d at 910, 584 N.E.2d at 489.

Finally, defendant complains that the prosecutor impermissibly commented on defendant's post-arrest silence when, in responding to defense counsel's argument that defendant was too afraid of Calhoun and Jackson to dissociate from them once the criminality began, he stated:

"You know, you can talk about being afraid, you know. That is why as soon as he got out of the car and ran right up to Sergeant Harris. Here is Sergeant Harris: 'I am afraid of these guys, that is why I went along.' No, he did not say that. Or [to] the State's Attorney, right? That is why he told the State's Attorney he was afraid. You never heard any evidence from the witness stand until yesterday that he was afraid."

The United States Supreme Court has held that a prosecutor may not comment on a defendant's post-arrest silence. (*Doyle v. Ohio* (1976), 326 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; accord *People v. Pegram* (1988), 124 Ill. 2d 166, 529 N.E.2d 506.) We find the above-quoted comment made by the prosecutor to be a violation of that principle for the reason that he expressly referred to defendant's post-arrest failure to inform the police that he feared Calhoun and Jackson. Nonetheless, the Illinois Supreme Court has recently held that a *Doyle* violation may be considered harmless error in certain circumstances. (*People v. Patterson* (1992), 154 Ill. 2d 414, 465-68.) In the case at bar, we find the error to be harmless beyond a reasonable

doubt considering the towering evidence of defendant's guilt and that the *Doyle* violation consisted of an isolated comment during the entire trial. See *Bell*, 234 Ill. App. 3d at 631, 600 N.E.2d at 908; *People v. Frisby* (1987), 160 Ill. App. 3d 19, 41, 512 N.E.2d 1337, 1351.

In sum, from a review of the entire record in the case at bar, by reason of the overwhelming evidence of defendant's guilt, his failure to object to some of the improper comments of the prosecutor, and the instances where the trial court sustained defense counsel's objections to the improper arguments, we are unwilling to say that the remarks of which complaint is made and to which defendant's objections were overruled deprived him of a fair trial or were a factor in his conviction. See *Bivens*, 163 Ill. App. 3d at 484, 516 N.E.2d at 745; see also *People v. Albanese* (1984), 102 Ill. 2d 54, 82-83, 464 N.E.2d 206, 220 (cumulative effect of harmless errors cannot amount to reversible error for "[t]he whole can be no greater than the sum of its parts"); accord *Manley*, 222 Ill. App. 3d at 912, 584 N.E.2d at 490.

### III

Defendant next asserts that several deficiencies in the jury instructions deprived him of his right to a fair trial. The State responds that defendant waived this issue because he did not object to the instructions at trial or include the alleged errors in his post-trial motion. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1129-30.) Supreme Court Rule 451(c) (134 Ill. 2d R. 451(c)) provides, however:

"Instructions in criminal cases shall be tendered, settled, and given in accordance with section 2—1107 of the Code of Civil Procedure, *but substantial defects are not waived by failure to make timely objections thereto if the interests of justice require.*" (Emphasis added.) 134 Ill. 2d R. 451(c).

In *People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861, our supreme court explained the "substantial defects" exception to the waiver rule embodied in Supreme Court Rule 451(c):

"The interests of justice demand that the rule of waiver be modified, in criminal cases, where necessary to ensure the fundamental fairness of the trial. [Citations.] Fundamental fairness includes, among other things, seeing to it that certain basic instructions, essential to a fair determination of the case by the jury, are given. Instructions on the elements of the offense are among these basic instructions, and we have recognized that the trial court has responsibility for ensuring that they are given. [Citation.] The failure correctly to inform the jury of the elements of the crime charged has been held to be error so

grave and fundamental that the waiver rule should not apply. [Citations.] It is of the essence of a fair trial that 'the jury not be permitted to deliberate a defendant's guilt or innocence of the crime charged without being told the essential characteristics of that crime.' [Citation.]'' *Ogunsola*, 87 Ill. 2d at 222, 429 N.E.2d at 864.

Accord *People v. Payne* (1990), 194 Ill. App. 3d 238, 246-47, 550 N.E.2d 1214, 1219.

Since defendant's allegations of error implicate the question of whether the jury was properly instructed on the elements of the crimes charged, we review the issues presented under Supreme Court Rule 451(c).

### A

Defendant first claims that the issues instructions to the jury were improper because they were in a general form which combined in the disjunctive three different ways in which aggravated criminal sexual assault could be committed. Therefore, since the jury returned a general verdict of guilty, defendant asserts, it is possible that the jury was not unanimous on any one count of the offense, thus violating due process.

The jury instructions pertinent to defendant's claim state as follows:

> "To sustain the charges of aggravated criminal sexual assault, the State must prove the following propositions:
>
> *First*: That the defendant, or one for whose conduct he is legally responsible, committed an act of sexual penetration upon [M.G.]; and
>
> *Second* That the act was committed by the use of force or threat of force; and
>
> *Third*: That the defendant, or one for whose conduct he is responsible, caused bodily harm to [M.G.];
>
> or
>
> *Third*: That the defendant, or one for whose conduct he is legally responsible, acted in a manner as to threaten or endanger the life of [M.G.]:
>
> * * *
>
> [or]
>
> *First*: That the defendant, or one for whose conduct he is responsible, committed an act of sexual penetration upon [M.G.]; and

*Second:* That the defendant, or one for whose conduct he is legally responsible, was 17 years of age or older and that [M.G.] was under the age when the act was committed."

Defendant's unanimity argument has been previously rejected by our courts. (*People v. Smith* (1991), 209 Ill. App. 3d 1043, 568 N.E.2d 482, *appeal denied* (1991), 139 Ill. 2d 603, 575 N.E.2d 921; *People v. Travis* (1988), 170 Ill. App. 3d 873, 525 N.E.2d 1137; *appeal denied* (1988), 122 Ill. 2d 590, 530 N.E.2d 260.) These cases stand for the proposition that "the jury need only be unanimous with respect to the defendant's guilt or innocence, and need not be unanimous as to the alternate ways in which the crime could have been committed." *Smith,* 209 Ill. App. 3d at 1059, 568 N.E.2d at 492.

The United States Supreme Court recently visited this issue in *Schad v. Arizona* (1991), 501 U.S. 555, 115 L. Ed. 2d 555, 111 S. Ct. 2491, where a jury convicted the defendant of first-degree murder after he was found with the murder victim's vehicle. The prosecutor argued for a first-degree murder conviction on theories of both premeditated murder and felony murder, and the jury convicted defendant of first-degree murder in a general verdict without indicating on which theory it relied. *Schad,* 501 U.S. at 629, 115 L. Ed. 2d at 563-64, 111 S. Ct. at 2495 (plurality opinion).

The issue before the Court was whether the United States Constitution requires a jury to agree on a single theory of first-degree murder. Although the case produced no majority opinion, the four-member plurality, with Justice Scalia concurring in the judgment, concluded that generally, "when a single crime can be committed in various ways, jurors need not agree on the mode of commission." (*Schad,* 501 U.S. at 649, 115 L. Ed. 2d at 577, 111 S. Ct. at 2506 (Scalia, J., concurring).)[1] The plurality and the concurrence also agreed that some alternative courses of conduct are so different that the due process clause of the fourteenth amendment to the United States Constitution prohibits them from being defined as alternative means of committing a single offense. (*Schad,* 501 U.S. at 632, 649, 115 L. Ed. 2d at 566, 577, 111 S. Ct. at 2497-98, 2506 (plurality opinion).) The disagreement between the plurality and Justice Scalia centered around which due process test should be applied to determine when the State's classification of crimes offends due process; the plurality adopted an evolv-

---

[1]Justice Souter also stated for the plurality that "[p]lainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Schad,* 501 U.S. at 632, 115 L. Ed. 2d at 565, 111 S. Ct. at 2497.

ing notion of due process, while Justice Scalia espoused his familiar historical approach. (*Schad*, 501 U.S. at 640-45, 651, 115 L. Ed. 2d 570-74, 577-78, 111 S. Ct. at 2500-03, 2507.) All five members of the plurality concluded, however, that there was nothing unconstitutional about offering a jury premeditated murder and felony murder as alternative methods of committing first-degree murder.

■ The rule to be derived from *Schad* is that a jury can properly return a single general verdict of guilty based on instructions which provide in the disjunctive alternative methods of committing a single crime, so long as those alternatives are not so divergent as to be constitutionally infirm. (Accord *United States v. Harris* (D.C. Cir. 1992), 959 F.2d 246, 255; *Usher v. Gomez* (N.D. Cal. 1991), 775 F. Supp. 1308, 1313.) In the case *sub judice*, we find that the instructions do not even approach a violation of that due process requirement. The instructions, which track section 12—14, state that defendant may be convicted of aggravated criminal sexual assault if the jury finds either that: (1) he committed a criminal sexual assault and inflicted bodily harm upon the victim; or (2) he committed a criminal sexual assault and threatened or endangered the life of the victim; or (3) he committed an act of sexual penetration, while 17 years or older, upon a victim who was under the age of 13. It is evident that these alternatives are merely three different methods of committing aggravated criminal sexual assault. The fact that the *mens rea* for the last method of committing the offense (strict liability) is different than the other two (general intent) is irrelevant, since the mental states of the two alternative methods of committing first-degree murder approved of in *Schad, i.e.*, premeditated murder (specific intent) and felony murder (general intent), were also different. Accordingly, since the jury was not required to specify upon which of the alternative means of committing aggravated criminal sexual assault it based its verdict, we find no error in its return of a general verdict of guilty for that offense.

B

Defendant also argues that the jury instructions are fatally defective because they erroneously define the elements of the offense of aggravated criminal sexual assault under section 12—14(b)(1). In considering the adequacy of instructions to a jury, our sole task is to determine whether they fully and fairly reflect the law. *People v. Kolep* (1963), 29 Ill. 2d 116, 125, 193 N.E.2d 753, 758; *People v. Campos* (1992), 227 Ill. App. 3d 434, 442, 592 N.E.2d 85, 90.

A person commits the offense of aggravated criminal sexual assault under section 12—14(b)(1) when "the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1).) The jury instruction pertaining to this count reads as follows:

"To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:

First: That the defendant, or one for whose conduct he is legally responsible, committed an act of sexual penetration upon [M.G.]; and

Second: *That the defendant, or one for whose conduct he is legally responsible, was 17 years of age or older and that [M.G.] was under 13 years of age when the act was committed.*" (Emphasis added).

Thus, it can be readily seen that in giving this instruction, the trial court inserted the phrase "or one for whose conduct he is legally responsible" into both elements of the offense of aggravated criminal sexual assault under section 12—14(b)(1). The Illinois pattern instruction on accountability[2] was also given to the jury, and the committee note to that instruction states:

"When [the accountability] instruction is given, insert the phrase 'or one for whose conduct he is legally responsible' after the word 'defendant' in each proposition of the issues instruction for the offense charged. * * *

*Note, however, that for some offenses, it will be inappropriate to insert that phrase in some or all of the propositions.* * * *

[Some] statutes would appear to require that particular conduct be committed by the defendant personally or that a status that is an element of the offense pertain to the defendant himself. Whenever accountability language is to be inserted in an issues instruction, caution should be exercised to assure that accountability language is not used in any proposition that in-

---

[2]The accountability instruction given to the jury provides:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of [that] offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense." Illinois Pattern Jury Instructions, Criminal, No. 5.03 (3d ed. 1992) (hereinafter IPI Criminal 3d).

volves such conduct or status." (Emphasis added.) IPI Criminal 3d No. 5.03, Committee Note.

We hold that this is one instance where the accountability language should not have been inserted into the issues instruction because the offense of aggravated criminal sexual assault under section 12—14(b)(1) is one where the status of the person accused of penetrating the victim is particularly important. It is clear that the age of the one who committed the penetration (here, either Calhoun or Jackson), and not the age of the one vicariously responsible for that conduct (here, defendant), is relevant for purposes of section 12—14(b)(1). It cannot be an either/or proposition for the reason that if Calhoun and Jackson were under 17 years of age, then section 12—14(b)(1) simply was not violated, as under that section a 16-year-old individual does not commit an aggravated criminal sexual assault merely because he sexually penetrates one who is 12 years old.

It is hornbook law that one cannot be held vicariously liable for an act committed by others which did not constitute an offense at the time of its commission. (J. Decker, Illinois Criminal Law, Criminality of Others 102 (1986) ("The key element in accountability is affirmative conduct on the part of an accomplice that in some way aids, encourages, or incites another person *to commit an illegal act*") (emphasis added); W. LaFave & A. Scott, 2 Substantive Criminal Law, Limits of Accomplice Liability §6.8, at 161 (1986) (A cannot be held liable for B's burglary for B did not commit a burglary).)[3] Consequently, if Calhoun and/or Jackson was under the age of 17, no illegal conduct occurred for which defendant could have been criminally responsible. The instruction given by the court, however, allowed the jury to convict defendant of aggravated criminal sexual assault under section 12—14(b)(1) even if it believed that he was over the age of 17, but that Calhoun and Jackson were under that age—an unsupportable proposition under section 12—14(b)(1). Accordingly, by inserting the Illinois pattern instruction phrase on accountability into the issues instruction for section 12—14(1)(b), the trial court improperly instructed the jury on this count of aggravated criminal sexual assault.

The State nevertheless contends that the error here was harmless because the evidence clearly supported the other count (bodily harm) of aggravated criminal sexual assault. The United States Supreme

---

[3]This is different from the rule which does not require that the one who actually committed the crime be convicted before the accomplice may be held responsible, since the State must still prove that the offense was committed by the principal before the accomplice may be convicted. See Ill. Rev. Stat. 1991, ch. 38, par. 5—3.

Court recently considered this issue in *Griffin v. United States* (1991), 502 U.S. 46, 116 L. Ed. 2d 371, 112 S. Ct. 466. In that case, the Court considered whether a reversal of a conviction based on a general verdict is required when an instruction contains alternative methods of committing the same crime, and one of those alternative methods is unsupported by the evidence. The Court first recognized that under the rule espoused in *Stromberg v. California* (1931), 283 U.S. 359, 75 L. Ed. 1117, 51 S. Ct. 532, where an instruction offers several alternative methods of committing a crime, one of which violates the United States Constitution, a conviction based on a general verdict must be reversed since it is impossible to determine upon which ground the jury relied. (*Griffin*, 502 U.S. at 53, 116 L. Ed. 2d at 378-79, 112 S. Ct. at 471.) It also noted that the *"Stromberg* rule" was expanded in *Yates v. United States* (1957), 354 U.S. 298, 1 L. Ed. 2d 1356, 77 S. Ct. 1064, to require a reversal of a conviction where an instruction contains several alternative ways of committing a crime, one of which is legally, though not necessarily constitutionally, infirm. (*Griffin*, 502 U.S. at 54-55, 116 L. Ed. 2d at 379-80, 112 S. Ct. at 472; see also *People v. Simms* (1991), 143 Ill. 2d 154, 171, 572 N.E.2d 947, 953 (adopting *Yates*).) The Court in *Griffin*, however, refused to expand the *Stromberg* rule any further, holding that a reversal of a general verdict of guilty is not required simply where the evidence is insufficient to support one of several alternative methods of committing the same crime given in an instruction to the jury. *Griffin*, 502 U.S. at 56, 116 L. Ed. 2d at 380-81, 112 S. Ct. at 472.

After *Griffin*, then, a general guilty verdict based on an instruction which includes different methods of committing the same offense in the disjunctive is grounds for reversal only where one alternative is legally defective, *i.e.*, fails to correctly state the law, and not where the flawed alternative is factually inadequate, *i.e.*, where the evidence is insufficient to sustain that count. (See *Walther v. Lone Star Gas Co.* (5th Cir. 1992), 952 F.2d 119, 126; *Solomon v. Commissioner of Correctional Services* (E.D.N.Y. 1992), 786 F. Supp. 218, 225.) Justice Scalia explained this distinction thus:

> "[This rule] establishes a clear line that *** happens to *** make good sense. Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of a crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their

own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying on a factually inadequate theory, since jurors *are* well equipped to analyze the evidence." (Emphasis in original.) *Griffin*, 502 U.S. at 59, 116 L. Ed. 2d at 382-83, 112 S. Ct. at 474.

Applying *Griffin* to the case at bar, it is clear that the instructional error here is a legal, and not a factual, one, given that it incorrectly articulates the elements of aggravated criminal sexual assault under section 12—14(b)(1). Therefore, *Griffin* prohibits us from presuming that the jurors realized that the instruction on the count dealing with aggravated criminal sexual assault under section 12—14(b)(1) was legally incorrect, disregarded that count, and convicted the defendant under the legally adequate alternative (section 12—14(a)(2)—bodily harm).

Nevertheless, the State urges, looking solely at the flawed alternative aggravated criminal sexual assault instruction, as we must under *Griffin*, the error was harmless beyond a reasonable doubt since the evidence here would have clearly supported a conviction under an instruction which properly stated the law under section 12—14(b)(1). In doing so, the State argues that the facts plainly illustrate that both Calhoun and Jackson were 17 years of age or older at the time of the incident, thus rendering harmless the instructional error which would have allowed the jury to convict defendant if it believed that he, but not Calhoun or Jackson, was 17 years of age or older at the time of the offense.

■ We agree. The Illinois Supreme Court has invariably held that an error committed while instructing the jury does not justify reversal where the evidence is such that the outcome of the trial would not have been different had the jury been properly instructed. See, *e.g., People v. Johnson* (1992), 146 Ill. 2d 109, 137, 585 N.E.2d 78, 90 ("An error in a jury instruction is harmless if it is demonstrated that the result of the trial would not have been different if the proper instruction had been given"); *People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 377, 568 N.E.2d 783, 792 ("Although it is not mandated in every case *** it is constitutionally permissible for a reviewing court to determine that given the facts of the individual case, the result would have been the same had the defect in the [jury] instructions not been present"); *People v. Austin* (1989), 133 Ill. 2d 118, 124, 549 N.E.2d 331, 333 ("[A]ny error in giving or refusing instructions will not justify a reversal when the evidence in support of the conviction is so

clear and convincing that the jury's verdict would not have been different'').

The only reference in the record to the ages of Calhoun and Jackson was elicited during the State's direct examination of Officer Harris, and that colloquy went as follows:

"[Prosecutor:] Did you learn of the ages of these three individuals?

[Office Harris:] Yes.

[Prosecutor:] And how old *are* they?

[Officer Harris:] Seventeen, eighteen, and nineteen. Mr. Griffin *is* eighteen.

[Prosecutor:] Mr. Griffin *was* eighteen at the time?

[Officer Harris:] Yes, sir.

[Prosecutor:] And did you learn his date of birth?

[Officer Harris:] Yes, sir, 6-16-69.

[Prosecutor:] And the age of Mr. Calhoun?

[Officer Harris:] Mr. Calhoun *is* 17.

[Prosecutor:] And the age of Mr. Jackson?

[Officer Harris:] Mr. Jackson, 18." (Emphasis added.)

Although Officer Harris used the present tense in testifying that "Mr. Calhoun *is* 17" and "Mr. Jackson, 18," he was plainly referring to the ages of the assailants at the time of the offense. This is clear because Officer Harris first stated that "Mr. Griffin *is* eighteen" before clarifying that defendant *was* 18 at the time of the offense. Therefore, we find it indisputable that Officer Harris was referring also to the ages of Calhoun and Jackson at the time of the offense, even though he spoke in the present tense. This conclusion is indefeasibly supported by the fact that since the trial was held on June 14, 1990, two years after the date of the offense (June 13, 1988), there is not even the likelihood that Officer Harris could have meant that defendant was 18 at the time of the offense and 19 at the time of the trial, thus eliminating the possibility that Officer Harris also meant that either Calhoun or Jackson was only 16 on the relevant date. Accordingly, we find that the evidence clearly established that both Calhoun and Jackson were 17 years of age or over at the time of the offense, and that, therefore, the court's error in interjecting the accountability phrase into the issues instruction on section 12—14(1)(b) was harmless beyond a reasonable doubt.

## C

Defendant finally contends that the jury instructions were fatally defective because they included one of the alternative aggravated

criminal sexual assault counts which had been nol-prossed by the State. The State admits that the trial court erred in including the count based on section 12—14(a)(3) (commission of criminal sexual assault while threatening or endangering the life of the victim); nevertheless, it argues that the error was harmless beyond a reasonable doubt.

Our supreme court addressed this issue in *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136, where it explained:

"The instructions given to the jury included one instruction which describes the crime of murder in terms of subsection (a)(2) of section 9—1, and another which described murder in terms of subsection (a)(3). The defendant contends that since the indictment charged the defendant with murder as defined in subsection (a)(1), and the judge instructed the jury as to what constitutes murder under subsections (a)(2) and (a)(3), the jury was left with 'no choice but to convict the defendant of an offense not charged by the indictment.' In support of this contention the defendant cites cases which hold that an accused may not be charged with one crime and the jury instructed regarding a different crime. [Citations.] We find that the defendant here was charged with murder and convicted of that crime, and even if the variance did exist between the type of murder charged in the indictment and the types described in the instructions, it would not vitiate the conviction unless it was of such a character as to mislead the defendant in his defense or expose him to double jeopardy. [Citations.] There is no evidence in this case whatsoever that the defendant was misled in his defense, nor did counsel at any time during the proceedings request additional time, allege surprise, or claim that it was impossible for him to prepare a defense to the proof being offered. [Citation.]" *Rosochacki*, 41 Ill. 2d at 492, 244 N.E.2d at 141.

We find the case *sub judice* to be indistinguishable from *Rosochacki*; in fact, the error in that case was more egregious for the reason that the court instructed the jury on counts for which the defendant was not even indicted. Defendant here, like Rosochacki, made no objection to the inclusion of the extra count in the instruction, nor does he claim that he was surprised or misled by it. Furthermore, the evidence against defendant supporting the other alternative counts of aggravated criminal sexual assault was overwhelming; consequently, we hold that the trial court's error in including in the jury instruc-

tions the nol-prossed count of aggravated criminal sexual assault was harmless beyond a reasonable doubt.

## IV

Finally, defendant urges that we remand the cause for resentencing for the reason that the trial court improperly entered judgment and sentence based on two counts of aggravated criminal sexual assault (one for Calhoun's assault and one for Jackson's assault) although the jury returned only a single general verdict of guilty for that offense. The State agrees that judgment and sentence should not have been entered on two counts of aggravated criminal sexual assault, but it also argues that we should reinstate defendant's conviction for criminal sexual assault and remand for resentencing accordingly because the trial court was required by statute to impose consecutive sentences for those two separate offenses.

■■ We find the State's arguments to be groundless. First, pursuant to Supreme Court Rule 604(a)(1), the State is not entitled to appeal the trial court's decision to impose concurrent, as opposed to consecutive, sentences. (134 Ill. 2d R. 604(a)(1); *People v. Kent* (1976), 40 Ill. App. 3d 256, 350 N.E.2d 890.) Second, criminal sexual assault is clearly a lesser included offense of aggravated criminal sexual assault (*People v. Coleman* (1991), 212 Ill. App. 3d 997, 571 N.E.2d 1035); thus, the trial court properly merged those two offenses under both the one-crime-one-act rule as well as the lesser-included offense rule. (See *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Finally, the statute (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(a)), which the State claims required the trial court to impose consecutive sentences on defendant, did not become effective until July 1, 1988, 18 days after the commission of the offenses here, and it is by now well established that "[t]he constitutional prohibition against *ex post facto* laws prevents the punishment for an offense being increased by an amendatory act taking effect after the offense has been committed." *People v. Ostrowski* (1920), 293 Ill. 91, 93, 127 N.E. 379, 380; accord *People v. Bosley* (1990), 197 Ill. App. 3d 215, 220, 553 N.E.2d 1187, 1191.

We also find, however, that it is unnecessary to remand the cause for resentencing. The trial judge sentenced defendant to two concurrent terms of seven years in the custody of the Illinois Department of Corrections; thus, remandment for resentencing is unnecessary even though we vacate one of defendant's two aggravated criminal sexual assault convictions. *People v. Donaldson* (1982), 91 Ill. 2d 164, 170-71, 435 N.E.2d 477, 480.

For all of the foregoing reasons, we affirm defendant's conviction on one count of aggravated criminal sexual assault, vacate his conviction for the other count of aggravated criminal sexual assault, and affirm his sentence of seven years in the custody of the Illinois Department of Corrections.

Affirmed in part; vacated in part.

McCORMICK, P.J., and HARTMAN, J., concur.