THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC HINES, Defendant-Appellant.

First District (1st Division)   No. 1—91—0310

Opinion filed December 27, 1993.

Michael J. Pelletier and Manuel S. Serritos, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and David B. Franks, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Eric Hines, was charged by indictment with attempted murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 9—1), armed violence predicated on aggravated battery causing great bodily harm (Ill. Rev. Stat. 1989, ch. 38, pars. 33A—2, 12—4(a)), aggravated battery causing great bodily harm (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(a)), and aggravated battery with the use of a deadly weapon (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(1)).[1] A jury convicted him of armed violence, and he appeals.

We vacate defendant's conviction and remand the cause for retrial.

Defendant's conviction stemmed from the shooting of Gregory Moffett on January 31, 1989. At that time, Moffett testified that he resided at the Cabrini-Green public housing complex in Chicago with his mother. Previously, Moffett had been associated with a street gang in the complex, but had not been a member for about 10 years. In December 1988, there was a "war going on" between the "younger" members of the gang and the "older" members of the gang over "territory" and "power." Moffett identified defendant as a member of the "older" faction of the gang. Moffett also admitted that he had

---

[1]Defendant was also charged with armed violence predicated upon aggravated battery committed upon a public way and aggravated battery committed on a public way. The State dropped these two charges prior to the beginning of the trial.

Under the aggravated battery statute in effect at the time defendant was indicted, aggravated battery based upon the use of a deadly weapon included the use of firearms. We note that, since that time, the statute has been changed to exclude firearms from that specific offense. (Compare Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(1), with 720 ILCS 5/12—4(b)(1) (West 1992).) Aggravated battery with a firearm now is a separate offense. See 720 ILCS 5/12—4.2 (West 1992).

been convicted of auto theft three times and was currently on probation. One of the conditions to his probation was his participation in a drug counseling program for his heroin addiction. At the time of the trial, Moffett had been in treatment for two months. During this time, he made two "urine drops" per week, and no heroin had been found in his system.

On the date of the incident, at approximately 4:30 p.m., Moffett, his girl friend, and his brother were at a gas station located on the corner of Noble and Division Streets. Moffett was pumping air into a spare tire when he met Mario Brown, a member of the "younger" faction of the street gang. Brown told Moffett that he was having some bodywork done on his car at the station. Suddenly, Moffett "heard a lot of shots" and started to run toward Division Street, away from the gas station. Moffett soon encountered defendant, who was running toward him with a small caliber gun in his hand. When Moffett saw the gun, he attempted to turn away from defendant. As he turned to his left, defendant shot him. Moffett fell to the ground and looked up at defendant, who fired two more shots at Moffett, both of which missed. Defendant turned and fled down Division Street.

Moffett got up and ran in the opposite direction from defendant. At that time, his brother arrived with the car, put Moffett in the back seat, and drove him to the hospital. Moffett suffered liver damage and loss of hearing in one ear as a result of the shooting. Moffett stated that he did not take any heroin before the shooting occurred because "it was too early in the day."

On February 11, 1989, police asked Moffett to look at a photographic array from which he identified defendant. On June 8, 1989, Moffett picked defendant from a lineup.

In late July 1989, two men "jumped" Moffett in his building in Cabrini-Green. The following day, defendant's cousin, Anthony Reynolds, approached Moffett and asked him if he (Moffett) was ready "to get it over with yet[?]" Moffett replied, "what's it going to take for us to get it over with[?]" By this, Moffett stated, he meant what would he have to do in order to stop the beatings. Reynolds instructed Moffett to see defendant's lawyer and tell him that the police "made" him say that defendant was his assailant. As ordered, Moffett went to the attorney's office where he purposely issued a reported statement that he did not see defendant shoot him and he did not see defendant holding a gun. Additionally, Moffett told the attorney that, at the preliminary hearing, the police "made" him testify that he had seen defendant hold the gun. Moffett explained that he told the defense attorney these lies because he was "beaten up." He iterated that he

had seen defendant shoot him and that defendant was three feet from him when he fired the shot.

William Moffett testified that he had accompanied his brother to the gas station on January 31. William was standing by the driver's side of the car when the shooting began. As soon as he heard the first shot, he "hit the deck." From his position on the ground, he warned his brother to "look out" because there was someone behind him shooting. William watched his brother flee toward Division Street and then noticed defendant running across Division with a gun in his hand. According to William, defendant and his brother came "face to face." His brother tried to turn away from defendant, but defendant shot him. After his brother fell to the ground, defendant fired two more shots at him. Defendant then ran across Division Street to a blue and white Mustang, and his brother attempted to run in the opposite direction. William and Moffett's girl friend put his brother into the car and flagged down a police officer, who escorted them to the hospital.

William identified defendant as his brother's assailant from a photographic array at the police station on February 11, 1989. William also picked defendant out of a lineup conducted by police in June.

Moffett's girl friend, Adeline Watkins, also provided testimony similar to both William's and Moffett's. Specifically, Watkins testified that she saw defendant run across Division Street, with gun in hand. Defendant came face to face with Moffett as Moffett was attempting to run away from the gas station. Watkins saw defendant shoot Moffett, saw Moffett fall to the ground, and saw defendant fire two additional shots at Moffett. Defendant then ran back across Division Street to a "little white car."

Chicago police detectives John Santopadre and William Kaupert both testified that they were present when Moffett identified defendant from photographs and a lineup as his assailant. Both detectives denied telling Moffett to select defendant as the shooter.

The parties stipulated that an emergency room physician removed a .25-caliber bullet from Moffett's side and that doctors performed surgery on Moffett to repair liver damage suffered as a result of the gunshot wound.

After the jury convicted defendant of armed violence, he filed a motion for a new trial and a motion in arrest of judgment. In the latter motion, defendant argued that his conviction for armed violence was enhanced improperly because the weapon was the predicate for both the aggravated battery charge and the armed violence charge. The circuit court disagreed, ruling that the indictment

indicated that the predicate felony for the armed violence conviction was aggravated battery based upon great bodily harm. Defendant's motion for a new trial was also denied, and the court sentenced defendant to a prison term of 12 years.

■ Defendant asserts that because the instructions did not limit the jury to consideration of solely aggravated battery based upon great bodily harm as the predicate for the armed violence charge, the jury might very well have considered the predicate felony to be aggravated battery based upon the use of a deadly weapon in contravention of *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627. The crux of defendant's argument is that the issue and definitional instructions given for the armed violence charge failed to distinguish between aggravated battery based upon great bodily harm and aggravated battery based upon the use of a deadly weapon. Defendant insists that his conviction for armed violence cannot stand because the jury's verdict did not indicate whether the underlying felony of aggravated battery was based on the theory that defendant had used a deadly weapon or on the theory that defendant had caused great bodily harm.

Defendant did not object to the instructions at trial, and neither his motion in arrest of judgment nor his motion for a new trial identified the given instructions as erroneous. Additionally, defendant did not tender any alternative instructions to the court. Each of these failures is fatal to the preservation of the issue for appellate review. (*People v. Thurman* (1984), 104 Ill. 2d 326, 472 N.E.2d 414; *People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742.) Supreme Court Rule 451(c), however, allows for the excusal of the waiver if "substantial defects" in the instructions are alleged. (See 134 Ill. 2d R. 451(c).) In interpreting this rule, the supreme court has noted that the failure to inform the jury correctly of the elements of the crime charged is an error "so grave and fundamental" that waiver rules should not apply. (*People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861.) In light of defendant's allegations, we will review the issue on the merits.

■ The armed violence statute provides that "[a] person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2.) The statute divides dangerous weapons into two categories: category I includes weapons such as guns and knives (Ill. Rev. Stat. 1989, ch. 38, par. 33A—1(b)); category II includes weapons such as blackjacks, bludgeons, and the like (Ill. Rev. Stat. 1989, ch. 38, par. 33A—1(c)). Violation of the armed violence statute with a category I weapon is a Class X felony. Violation of the statute with a

category II weapon is a Class 2 felony. Ill. Rev. Stat. 1989, ch. 38, par. 33A—3.

Despite its relatively straightforward language, the armed violence statute has been the subject of much judicial scrutiny since its enactment. Specifically, our courts have focused on which particular felonies may be used as proper predicate felonies for armed violence prosecutions.[2] For example, in *People v. Haron,* using the concept of double enhancement, the supreme court affirmed the dismissal of an armed violence charge. The court determined that the legislature did not intend that "the presence of a weapon serve to enhance an offense from misdemeanor to felony and also to serve as the basis for a charge of armed violence," which was routinely occurring under a literal application of the statute. (*People v. Haron,* 85 Ill. 2d at 278.) The court, therefore, recognized that the words "any felony" in the armed violence statute are subject to limitation, and that aggravated battery based upon the use of a deadly weapon cannot be used as the predicate offense to armed violence. (*People v. Haron,* 85 Ill. 2d 261, 422 N.E.2d 627. See also *People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512 (unlawful restraint improper predicate to armed violence); *People v. Alejos* (1983), 97 Ill. 2d 502, 510, 455 N.E.2d 48 (voluntary manslaughter cannot serve as the predicate felony for the armed violence statute).) Aggravated battery causing great bodily harm, however, has been recognized as a proper predicate felony. *People v. Drakeford* (1990), 139 Ill. 2d 206, 214, 564 N.E.2d 792.

The pattern instruction for armed violence is as follows:

"A person commits armed violence when he commits the offense of _____ while armed with a dangerous weapon.

A person is considered armed with a dangerous weapon when he carries on or about his person or is otherwise armed with a _____." (Illinois Pattern Jury Instructions, Criminal, No. 11.19 (2d ed. 1981) (hereinafter IPI Criminal 2d).)

The following issues instruction is to be given to the jury in addition to the above definitional instruction:

"To sustain the charge of armed violence, the State must prove the following propositions:

---

[2]When first enacted in 1967, the armed violence statute enumerated offenses deemed to be proper predicate offenses, and aggravated battery specifically was listed. (Ill. Rev. Stat. 1967, ch. 38, par. 33A—1.) The legislature amended the armed violence statute in 1978 to apply to *any* felony committed while armed with a dangerous weapon. Ill. Rev. Stat. 1979, ch. 38, par. 33A—1.

*First*: That the defendant committed the offense of _____; and

*Second*: That when he committed the offense of _____ he was armed with a dangerous weapon." (IPI Criminal 2d No. 11.20.)

The committee note to the instructions directs that "a felony defined by Illinois law" be inserted into the blank spaces which relate to the predicate offense. (IPI Criminal 2d No. 11.19, Committee Note, at 233.) At trial, the phrase "aggravated battery" was inserted into the appropriate blanks, and "handgun" was identified as the weapon carried during the offense in the armed violence instructions tendered to the jury.

■ Generally, in reviewing the adequacy of instructions, we must consider all of the instructions as a unit to ascertain whether they fully and fairly cover the law. (*People v. St. Pierre* (1975), 25 Ill. App. 3d 644, 324 N.E.2d 226.) All the instructions given in the present case were pattern instructions, in accordance with Supreme Court Rule 451. (134 Ill. 2d R. 451.) That rule mandates the use of the pattern instructions in criminal cases, unless the instruction does not accurately state the applicable law. (See 134 Ill. 2d R. 451.) Moreover, the pattern instructions may be modified where the facts of the case render the uniform instruction inadequate. In such instances, the discretion to modify the instruction lies with the circuit court. See 134 Ill. 2d R. 451; *People v. Finley* (1977), 49 Ill. App. 3d 26, 363 N.E.2d 871.

■ As noted, the armed violence instructions given to the jury here referred simply to "aggravated battery," with no qualifying language as the underlying felony. However, when the State, as here, in addition to trying a defendant for armed violence based on aggravated battery tries a defendant under two different theories of aggravated battery, one of which is aggravated battery based upon the use of a deadly weapon, the jury may be misled by instructions that do not specifically restrain the jury from considering deadly weapon aggravated battery as the predicate offense for armed violence. Thus, we hold that in these cases, the armed violence instructions must be composed in such a way as to ensure that the jury does not consider that form of aggravated battery as the predicate felony for the armed violence charge. To permit otherwise would be to circumvent the rule established in *People v. Haron*. Here, the jurors were given both aggravated battery instructions, one of which was aggravated battery based upon the use of a deadly weapon. The armed violence instruction, however, did not direct the jury to consider only the aggravated battery based upon great bodily harm during its deliberations. This was error, because, under the circum-

stances present here, we cannot say that the jury did not convict the defendant of both aggravated battery based on the use of a dangerous weapon as well as of armed violence hinging on that very same predicate.

As noted, the jury here found defendant guilty of armed violence. No aggravated battery verdict form was signed although the jury was given verdict forms for both theories. Ironically, the trial judge instructed the jury not to sign any of those forms if it found defendant guilty of armed violence, apparently in an effort to avoid possible double enhancement problems. Such fears could have easily been alleviated by the inclusion of the condition "based upon great bodily harm" in the armed violence instructions. In that way, there could be no uncertainty as to which aggravated battery theory had been chosen as the predicate felony for armed violence.

The State offers that the jury's verdict can be affirmed because the evidence of great bodily harm was overwhelming and because the armed violence conviction was "indisputably" predicated upon the appropriate felony, as was stated in the indictment. The State's argument, however, misapprehends defendant's contention. That the indictment for armed violence contained the proper predicate felony is irrelevant when the jury instructions allow for the possibility of conviction on legally impermissible grounds. Although we have rejected a similar challenge to an armed violence conviction in the past because the "armed violence verdict could properly be based on the underlying felony of aggravated battery (great bodily harm)" (see *People v. Ross* (1981), 100 Ill. App. 3d 1033, 427 N.E.2d 955, *appeal denied* (1981), 85 Ill. 2d 560), our recent decisions have cast doubt upon the rationale in *Ross.* (See *People v. Griffin* (1993), 247 Ill. App. 3d 1, 616 N.E.2d 1242; *People v. Cardona* (1992), 240 Ill. App. 3d 110, 608 N.E.2d 81, *appeal allowed* (1993), 149 Ill. 2d 653, 612 N.E.2d 517.) Furthermore, in addressing this claim, we are mindful of the fact that "[t]he legal education of the jurors comes from the instructions." (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 159-60, 429 N.E.2d 526.) Indeed,

> "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law ***. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." (*Griffin v. United States* (1991), 502 U.S. 46, 59, 116 L. Ed. 2d 371, 382-83, 112 S. Ct. 466, 474.)

In view of these concerns, we cannot affirm the jury's verdict due to the possibility that the instructions allowed for the chance of an improper double enhancement.

Moreover, we do not agree with the State's suggestion that defendant's conviction be affirmed in light of the overwhelming evidence of the great bodily harm suffered by Moffett. The evidence in this case that defendant used a handgun is as overwhelming as the evidence of great bodily harm, if not greater. We will not speculate whether the jury, by its verdict, found defendant guilty of armed violence predicated upon aggravated battery based upon great bodily harm, which is a proper predicate felony, or of armed violence predicated upon aggravated battery based upon the use of a deadly weapon, which is not.

The State further attempts to save its conviction by claiming that any error that may have resulted from the improper instructions should be considered harmless. That we cannot do. The State ignores the implication of the armed violence statute, which is to punish more severely those individuals convicted of a felony while armed with a dangerous weapon. In this case, the armed violence statute enhanced aggravated battery, a Class 3 felony, to a Class X felony. Under *Haron*, assuming the jury here improperly used aggravated battery based upon the use of a deadly weapon as the predicate felony for the armed violence conviction, the defendant would be guilty of only the lesser-included charge, aggravated battery, a Class 3 felony. The 12-year sentence given to defendant here falls outside the sentencing range of two to five years provided for a Class 3 felony. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1.) Therefore, the error is not harmless.

Based upon the foregoing, we vacate defendant's conviction and remand the cause for a new trial. Because of our disposition of this issue, we need not address defendant's other claims of error.

Vacated and remanded.

MANNING, P.J., and BUCKLEY, J., concur.