# Illinois Official Reports

## Appellate Court

***People v. Melecio*, 2017 IL App (1st) 141434**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE MELECIO, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-1434 |
| Filed<br>Rehearing denied | September 21, 2017<br>October 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-14487; the Hon. John Joseph Hynes, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Robert Hirschhorn, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Hall and Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant Jose Melecio was convicted of first degree murder and unlawful vehicle invasion after a jury trial and was sentenced to consecutive terms of 55 years and 10 years, respectively, for a total of 65 years with the Illinois Department of Corrections (IDOC).

¶ 2      Defendant raises a number of issues on appeal, including (1) whether the integrity of the judicial system was undermined and plain error occurred when the State nol-prossed the felony murder charges prior to trial and then sought and received jury instructions on felony murder, thereby permitting a murder conviction without the State having to prove intent; (2) whether defendant received ineffective assistance of trial counsel when counsel failed to object to the felony murder instructions; (3) whether a felony murder charge was permitted under the *Morgan* doctrine (*People v. Morgan*, 197 Ill. 2d 404, 447-48 (2001)), which requires that the predicate felony must have an independent felonious purpose, when the State asserted in the indictment that the underlying vehicular invasion was done with the intent to commit murder; (4) whether the one-act, one-crime rule was violated when the indictment charged that defendant committed vehicular invasion with the intent to commit murder, and the jury was instructed that defendant could be found guilty of felony murder based on vehicular invasion; (5) whether the State failed to establish guilt of murder beyond a reasonable doubt where the State's theory rested on a contradiction that defendant killed his friend to retaliate for acts done by others who the State was then unable to link to the decedent; (6) whether it was error to allow the substantive admissions of witnesses' prior inconsistent statements; and (7) whether the trial court erred by refusing a second degree murder instruction based upon sudden and intense passion from mutual combat where that combat was claimed by the State as the motivation for the murder.

¶ 3      Defendant asks this court to vacate his murder conviction or his vehicular invasion conviction or both or, in the alternative, to reverse his convictions and remand for a new trial or, in the alternative, to order that his sentence for vehicular invasion not run consecutively to his murder sentence.

¶ 4      For the following reasons, this court affirms defendant's murder conviction but vacates his conviction for vehicular invasion.

¶ 5                                 BACKGROUND

¶ 6                                     I. Indictment

¶ 7      On August 20, 2010, defendant and codefendant Robert Gonzalez were indicted in a 16-count indictment, stemming from the death of Carlos Aguirre on November 8, 2009. Fourteen of the 16 counts were for first degree murder. Count VIII is not in the appellate record. The remaining count, count XVI, was for vehicular invasion.

¶ 8      Counts III and XIII both charged felony murder committed during the commission of vehicular invasion. Count III charged that defendants

> "without lawful justification, shot and killed [the decedent] while armed with a firearm during the commission of a forcible felony, to wit: vehicular invasion, in violation of chapter 720 Act 5 Section 9-1(a)(3) of the Illinois Compiled Statutes 1992 as amended."

Section 9-1(a)(3) of the Criminal Code of 1961 cited above is the statutory subsection that charges felony murder. 720 ILCS 5/9-1(a)(3) (West 2008). Count XIII added that "during the commission of the offense of first degree murder he personally discharged a firearm that proximately caused death."

¶ 9 On November 18, 2013, the State informed the trial court that it was "proceeding" on only counts I, II, IV, and XVI. The trial court responded: "State, you are proceeding on counts 1, 2, 4 and 16. All other counts will be Motion State nolle pros." Thus, both counts III and XIII, which were the only counts that cited the felony murder subsection, were nol-prossed.

¶ 10 There were four counts remaining after the State's *nolle prosequi*. Count I charged intentional first degree murder, in that defendants "intentionally or knowingly shot and killed" the victim "while armed with a firearm." Count II charged first degree murder, in that defendants shot and killed the decedent with a firearm "knowing that such act created a strong probability of death or great bodily harm." As already noted above, count XVI charged vehicular invasion, in that defendants

> "knowingly, by force and without lawful justification, entered or reached into the interior of a motor vehicle, to wit: 2010 Toyota Tundra occupied by [the decedent], with the intent to commit therein a felony, to wit: first degree murder."

¶ 11 Count IV charged that defendants shot and killed the decedent

> "while armed with a firearm (and the State shall seek an extended term sentence) in that the murdered individual was actually killed *** during the course of an underlying felony: vehicular invasion, in violation of Chapter 720 Act 5 section 9-1(a)(1) of the Illinois Compiled Statutes 1992 as amended."

¶ 12 Although count IV charged that the murder occurred "during the course of an underlying felony," the count did not cite the statutory section for felony murder (720 ILCS 5/9-1(a)(3) (West 2008)), but instead cited the statutory section for intentional murder (720 ILCS 5/9-1(a)(1) (West 2008)).[1]

¶ 13                                   II. Evidence at Trial

¶ 14 The evidence established that defendant, the decedent, and the decedent's girlfriend, Maria Reyes, were all at the Green Dolphin bar drinking on the night of the murder. At some point, there was an altercation at the bar. Defendant was punched by someone (not the decedent) and after security broke up the fight, defendant was escorted out of the bar. Reyes stated to the police that, after she and the decedent entered their vehicle in the parking lot later that same night, the decedent was drunk and defendant and another man pulled the drunk decedent out of the vehicle. Prior to trial, she stated that she observed something black in defendant's hand and that defendant fired three shots in the decedent's direction. Specifically, Reyes signed a pretrial statement—admitted into evidence at trial and published to the jury—that stated that defendant "leaned towards [the decedent], and she saw him fire three shots in the direction of [the decedent]." However, at trial, she stated in her testimony almost 50 times that she did not recall the events of that night. No gun was recovered and no confession was made by anyone to the murder, but defendant's fingerprints were found both on the inside and outside of the vehicle's

---

[1]Count IV also did not cite a statute relating to "an extended term sentence." However, after trial, defendant was subsequently sentenced to a firearm enhancement of 15 years.

doors. Of the four people who Reyes stated were next to the vehicle when the murder occurred—Reyes, the decedent, defendant, and the other man—only two took the stand at trial: Reyes and defendant.[2]

¶ 15      In addition to Reyes's statements and the fingerprint evidence, the State also presented the testimony of a number of other witnesses, including Arturo Quevado, whom defendant telephoned after defendant was escorted out of the bar. Arturo Quevado testified that he and defendant were lifelong friends and that defendant called Quevado that night to come "pick him up" because "he got into a fight." Quevado picked up defendant in the area of Ashland and Western Avenues and drove to a gas station, where defendant briefly exited the vehicle. Defendant reentered the vehicle with Michael Silva. Quevado testified that they drove to the vicinity of the Green Dolphin and parked nearby. They were four or five vehicles away from another vehicle that they were watching. Although Quevado testified that he did not recall if defendant exited the vehicle, he later testified that he observed defendant approaching the vehicle they were watching, and that there was a man lying on the ground with a woman nearby. Quevado then testified that he observed a man run out of an alley, towards the other vehicle with something shiny in his hands. Quevado then made a U-turn, and as he was making the U-turn, he heard gunshots and observed defendant running back toward his vehicle, which defendant entered. Silva was still in the backseat. Defendant gave Quevado directions to drive in a zigzag pattern, which Quevado did.

¶ 16      Michael Silva testified that he also received a phone call from defendant on the night of the murder, asking for help. As a result, Silva entered a vehicle driven by Joseph Finnegan, with codefendant Robert Gonzalez as a passenger. During the ride, Gonzalez received a phone call and then informed Silva that they were heading to the Green Dolphin because defendant "got jumped." During the ride, Gonzalez showed Silva a gun that Gonzalez had in his possession. They stopped at a gas station and Silva switched vehicles, entering the vehicle with defendant and Quevado. Silva looked behind them and observed that Gonzalez's vehicle was following them to the Green Dolphin. The two vehicles parked near the Green Dolphin, and defendant exited their vehicle. While defendant was out of the vehicle, Silva heard three or four gunshots. After the gunshots, Quevado started to drive away, but defendant flagged him down and reentered the vehicle. After defendant reentered the vehicle, defendant said "F*** that n***" and "F*** him, he deserved it."

¶ 17      Defendant testified that he had a good relationship with the decedent, that they were drinking buddies who had drinks together two or three times a week, and that they drove to the Green Dolphin together on the night of the murder in the decedent's vehicle. At some point, some individuals, who defendant did not know, began hitting him. Defendant was then grabbed from behind and escorted out of the club by security. Defendant did not know why he was punched and did not recognize the individuals who did it. Once outside the club, defendant called Quevado to come pick him up, but he did not call Silva. Some men started chasing defendant, and he ran. Later, he observed Quevado driving past him and flagged him down. Then they drove to a gas station so defendant could purchase cigarettes. Silva did not enter their vehicle, and Quevado did not drive defendant back to the vicinity of the Green Dolphin. Quevado and defendant drove to Quevado's house, where Quevado exited, and then defendant

---

[2]As we discuss later, defendant claims that Reyes took the stand but did not testify sufficiently to satisfy his sixth amendment right to confrontation. *Infra* ¶¶ 93-99.

drove to Silva's apartment building. Defendant drove to Silva's building to ask Silva to take defendant to someone from whom defendant could purchase cocaine. After purchasing cocaine, defendant drove to his father's house.

¶ 18                                    III. Jury Instructions

¶ 19    After both sides rested, the trial court stated that the court and the attorneys had already conducted an "informal conference" off the record concerning jury instructions. However, the court stated that they would now "go over" the instructions again "for the record." The trial court then announced each instruction by number, and the attorneys stated whether they did or did not object. During this process, the trial court repeated that "I'm giving some of these instructions, these—we've had argument off the record."

¶ 20    With respect to first degree murder, defendant did not object to People's Instruction No. 19 (Illinois Pattern Jury Instructions, Criminal, No. 7.02 (4th ed. Supp. 2009) (hereinafter IPI Criminal 4th No. 7.02 (Supp. 2009)), which stated:

> "To sustain the charge of first degree murder, the State must prove the following propositions:
>
> *First*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of [the decedent]; and
>
> *Second*: That when the defendant, or one for whose conduct he is legally responsible, did so, he intended to kill or do great bodily harm to [the decedent]; or
>
> He knew that his acts created a strong probability of death or great bodily harm to [the decedent]; or
>
> He was committing the offense of vehicular invasion; and
>
> *Third*: That the defendant, or one for whose conduct he is legally responsible, was armed with a firearm.
>
> If you find from your consideration of all the evidence that each of one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 21    With respect to vehicular invasion, People's Instruction No. 23 (IPI Criminal 4th No. 11.94 (Supp. 2009)) stated:

> "To sustain the charge of vehicular invasion, the State must prove the following propositions:
>
> *First*: That the defendant, or one for whose conduct he is legally responsible, knowingly reached into the interior of a motor vehicle; and
>
> *Second*: That the defendant, or one for whose conduct he is legally responsible, did so by force:
>
> *Third*: That the motor vehicle was occupied by another person;
>
> *Fourth*: That the defendant, or one for whose conduct he is legally responsible, did so with *the intent to commit therein the offense of first degree murder.*

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Emphasis added.)

### IV. Verdict and Sentencing

After hearing the jury instructions and closing arguments, the jury deliberated and returned unanimously-signed verdict forms finding defendant guilty of both first degree murder and vehicular invasion.

On December 18, 2013, defendant filed a posttrial motion for a new trial that raised numerous grounds, including that the trial court erred by overruling "any objections that were made to jury instructions." On April 9, 2014, defendant filed a supplemental motion arguing that the evidence did not support a conviction for murder based on accountability. The trial court denied both posttrial motions and proceeded to sentencing, where defense counsel argued that defendant had "a total lack of criminal background." The trial court then sentenced defendant to 40 years for the murder, with an additional 15 years for a firearm enhancement, for a total of 55 years for the murder conviction. The court then sentenced defendant to 10 years for the vehicular invasion, to run consecutively to the 55-year murder conviction. The trial court then stated: "Counts 2 and 4 will be merged into the first-degree murder charge on Count 1."

The mittimus, dated April 9, 2014, stated that defendant was found guilty of count I, "720-5/9-1(A)(1) Murder/Intent to Kill/Injure" (720 ILCS 5/9-1(a)(1) (West 2008)) and count XVI, "720-5/12-11.1 Unlawful Vehicular Invasi[on]" (720 ILCS 5/12-11.1 (West 2008)).[3] Thus, the mittimus states that defendant was guilty of intentional murder rather than felony murder.

The mittimus stated that defendant was sentenced to 55 years for the intentional murder and 10 years for the vehicular invasion, with the sentences to run consecutively. The mittimus further stated that counts II and IV were merged into count I and that the 55-year sentence for count I included a 15-year "enhanced" sentence for committing the murder with a firearm.

On May 7, 2014, the trial court denied defendant's motion to reconsider sentence. This appeal followed.

### ANALYSIS
#### I. Felony Murder
#### A. Defendant's Claims

Defendant makes a number of claims on appeal with respect to felony murder that are all related.

---

[3]Section 12-11.1 was renumbered as section 18-6, effective January 1, 2013. 720 ILCS 5/18-6 (West 2014). The section remained substantively the same, but it made minor grammatical changes, such as substituting "he or she" for "who."

¶ 32    Defendant argues, first, that the State correctly nol-prossed the felony murder charge prior to trial, after the State realized that the charge could not stand. Defendant argues that felony murder was an impermissible charge because a predicate felony must have an independent felonious purpose other than murder, the predicate felony in the case at bar was vehicular invasion, vehicular invasion requires entry with the intent to commit a theft or felony, and the intended felony, according to the State, was murder. Since the purpose of the vehicular invasion, as charged by the indictment and described in the jury instructions, was murder, defendant argues that the predicate felony did not have an independent felonious purpose and the felony murder charge could not stand. Thus, defendant argues, the State correctly nol-prossed it prior to trial.[4]

¶ 33    Nonetheless, the State still submitted jury instructions for felony murder and defendant's counsel did not object to them on the record.

¶ 34    In an attempt to overcome the issue of forfeiture, defendant makes several arguments: (1) that instructing on the nol-prossed charge violates due process because the State affirmatively waived its right to proceed on that charge by nol-prossing and waiver applies equally to the State as to a defendant, (2) that trial counsel was ineffective for failing to object to the jury instructions, and (3) that charging both felony murder based on vehicular invasion and vehicular invasion based on an intent to commit murder violates the one-act, one-crime rule and constitutes plain error under the "substantial rights"—or second prong—of the plain error doctrine.

¶ 35    In response, the State makes several arguments, including that the State is not required to charge felony murder in order to request a felony murder instruction[5] and that, when there is a general jury verdict as there was in this case, a court presumes that the jury convicted on the most serious charge which, in this case, was intentional murder. *Morgan*, 197 Ill. 2d at 448. If one presumes that the jury's verdict was for intentional murder, then the problems concerning the felony murder instructions are not applicable.

¶ 36    However, defendant argues that if it is possible that a jury convicted him on an impermissible basis, then reversal is required. *People v. Hines*, 257 Ill. App. 3d 238, 245 (1993) (if "the jury instructions allow for the possibility of conviction on legally impermissible grounds," reversal is required). As explained above, defendant argues that felony murder was an impermissible basis, since there was no independent felonious purpose for the predicate felony.

¶ 37    There are two different cases cited, which point to two different conclusions. The State is correct that, based on *Morgan*, 197 Ill. 2d at 448, we must presume that a verdict based on a general verdict form was for the most serious charge. Defendant is equally correct that, based on *Hines*, 257 Ill. App. 3d at 245, if there is a "possibility" that the jury convicted on an impermissible basis, reversal is required. For the reasons discussed below, we find that

---

[4]The State does not argue that count IV charged felony murder. In its brief to this court, the State admits that, "as defendant represents, the People did not have a charge of felony-murder pending" but, nonetheless, "the jury was instructed as to the theory of felony-murder." The State's brief also states about count IV: "Admittedly, this is not a count of felony-murder."

[5]In his brief, defendant forthrightly admits "that one can be convicted of felony-murder under an indictment charging murder on other theories (*People v. Maxwell*, 148 Ill. 2d 116, 133-39 (1992))."

*Morgan* dictates the result here.

¶ 38                                    B. Standard of Review

¶ 39          First, we must discuss the correct standard of review.

¶ 40          All of defendant's claims concerning felony murder stem from the trial court's use of felony murder jury instructions.

¶ 41          The trial court's decision to give, or not give, a particular jury instruction is within the sound discretion of the trial court. *People v. Anderson*, 2012 IL App (1st) 103288, ¶ 34. Generally, a reviewing court will review jury instructions only for an abuse of discretion. *People v. Mohr*, 228 Ill. 2d 53, 66 (2008); *In re Dionte J.*, 2013 IL App (1st) 110700, ¶ 64. An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position adopted by the trial court. *People v. Ciborowski*, 2016 IL App (1st) 143352, ¶ 88.

¶ 42          Although jury instructions are generally reviewed for an abuse of discretion, our standard of review is *de novo* when the question is whether the given jury instructions accurately explained the applicable law to the jury. *Anderson*, 2012 IL App (1st) 103288, ¶ 34; see also *Barth v. State Farm Fire & Casualty Co.*, 228 Ill.2d 163, 170 (2008). *De novo* consideration means that we perform the same analysis a trial court would perform. *Condon & Cook, L.L.C. v. Mavrakis*, 2016 IL App (1st) 151923, ¶ 55.

¶ 43          Defendant argues that our standard of review is *de novo*, and the State does not contend otherwise. If we presume that the verdict was for intentional murder, and not felony murder as the State argues, then any issues with the felony murder jury instructions no longer pose a concern. The effect of a general verdict form is a purely legal question, which we review *de novo*. *People v. Smith*, 233 Ill. 2d 1, 15-21 (2009) (our supreme court applied *de novo* review when determining the effect of a general verdict form).

¶ 44          Since defendant failed to object to the felony murder instructions, he asks us to review his claims under the plain error doctrine (*People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)) and also as ineffective assistance of counsel (*Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Defendant also makes arguments under Illinois Supreme Court Rule 451(c), which states that "substantial defects" in jury instructions "are not waived by failure to make timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013). However, Rule 451(c) is construed identically with the plain error doctrine. *People v. Armstrong*, 183 Ill. 2d 130, 151 n.3 (1998).

¶ 45          The plain error doctrine allows a reviewing court to consider an unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 48; *Piatkowski*, 225 Ill. 2d at 565. "The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial." *Sebby*, 2017 IL 119445, ¶ 49.

¶ 46          Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's performance was objectively unreasonable under prevailing professional norms and (2) that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. *In re Edgar C.*, 2014 IL App (1st) 141703, ¶¶ 77-78 (citing *People v. Domagala*, 2013 IL 113688, ¶ 36); see also *Strickland*, 466 U.S. at 687.

¶ 47 Under either prong of the plain error doctrine, we must first find that the alleged error was clear or obvious. *Sebby*, 2017 IL 119445, ¶ 49. Similarly, under *Strickland*, we must find that counsel's performance was objectively unreasonable. *Edgar C.*, 2014 IL App (1st) 141703, ¶¶ 77-78 (citing *Domagala*, 2013 IL 113688, ¶ 36).

¶ 48 In addition, under either *Strickland* or the first prong of the plain error doctrine, we must find a reasonable probability that the result of the proceeding would have been different. *People v. White*, 2011 IL 109689, ¶ 133. Under the second prong of the plain error doctrine, we must find that the error challenged the integrity of the judicial process. Thus, under any of these tests, we must find both a clear or obvious error and prejudice or injury in some form.

¶ 49                          C. *Hines* and *Morgan*

¶ 50 Defendant relies on the appellate court case of *Hines* to argue that, if it is possible that the jury convicted him on an impermissible basis, then reversal is required. *Hines*, 257 Ill. App. 3d at 245 (if "the jury instructions allow for the possibility of conviction on legally impermissible grounds," reversal is required).

¶ 51 In *Hines*, the defendant was charged with armed violence. *Hines*, 257 Ill. App. 3d at 242. The armed violence statute provided that a person committed armed violence if, when armed with a dangerous weapon, he committed any felony. *Hines*, 257 Ill. App. 3d at 242. In essence, the statute served as an enhancement for a felony that was committed with a dangerous weapon. *Hines*, 257 Ill. App. 3d at 242. As a result, aggravated battery, based upon the use of a deadly weapon, could not serve as the predicate felony for armed violence because, otherwise, the one weapon would be used to enhance the offense twice—once for the aggravated battery that served as the predicate felony, and once again to enhance that felony to armed violence. *Hines*, 257 Ill. App. 3d at 243 (citing *People v. Haron*, 85 Ill. 2d 261, 278 (1981)).

¶ 52 In *Hines*, the State charged defendant with (1) armed violence, (2) aggravated battery based upon use of a deadly weapon, and (3) aggravated battery based upon great bodily harm. *Hines*, 257 Ill. App. 3d at 244-45. However, the trial court instructed the jurors not to complete the aggravated battery verdict forms if they found defendant guilty of armed violence. *Hines*, 257 Ill. App. 3d at 245. As a result, the armed violence verdict form was, in essence, a general verdict form, as in the case at bar. Although the *Hines* defendant, like defendant in the case at bar, did not object to the jury instructions, the appellate court found that reversal was required "due to the possibility that the instruction allowed for the chance" that defendant was convicted of armed violence on an improper basis, namely, aggravated battery based upon use of a deadly weapon. *Hines*, 257 Ill. App. 3d at 245.

¶ 53 The *Hines* case has several similarities to the case at bar—a general verdict form, no objection to the instruction at issue, and the "possibility" of a verdict based on more than one basis. *Hines*, 257 Ill. App. 3d at 245.

¶ 54 However, *Hines* turns on first finding that one of the possible bases for the conviction was impermissible. To make that argument for felony murder in this case, defendant relies primarily on the supreme court's decision in *Morgan*.

¶ 55    In *Morgan*, the appellate court found that the defendant could not be found guilty of felony murder based upon the underlying felonies of aggravated battery and aggravated discharge of a firearm. *Morgan*, 197 Ill. 2d at 444. Prior to trial, the defendant moved to dismiss the felony murder counts against him, and the trial court denied the motion. *Morgan*, 197 Ill. 2d at 444. The appellate court held that the trial court had erred because "the predicate felony underlying a felony-murder charge must have a felonious purpose other than the killing itself." *Morgan*, 197 Ill. 2d at 446. The supreme court affirmed, on the ground that the aggravated battery and aggravated discharge of a firearm were "acts that were inherent in, and arose out of, the fatal shootings." *Morgan*, 197 Ill. 2d at 447. The supreme court found: "we agree with the appellate court that, where the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of murder." *Morgan*, 197 Ill. 2d at 447.

¶ 56    Defendant argues, based on *Morgan*, that the vehicular invasion in the case at bar was "inherent in the act of murder itself," because pulling the decedent from his vehicle was the first step in murdering him. *Morgan*, 197 Ill. 2d at 447. The purpose of felony murder is "to deter persons from committing forcible felonies by holding them responsible for murder if a death results." *People v. Dennis*, 181 Ill. 2d 87, 105 (1998). The additional deterrence is duplicative if the purpose of the underlying felony was the murder itself.

¶ 57    As the *Morgan* court itself observed, "[o]ur inquiry, however, does not end there." *Morgan*, 197 Ill. 2d at 448. The *Morgan* court stated that it "disagree[d] with the appellate court's conclusion that the error in this case constituted reversible error." *Morgan*, 197 Ill. 2d at 448. Unfortunately for defendant, the court's ensuing analysis applies to his case as well.

¶ 58    In *Morgan*, as in our case, the jury was instructed concerning more than one type of first degree murder. *Morgan*, 197 Ill. 2d at 448. The *Morgan* charges included both intentional murder and felony murder. *Morgan*, 197 Ill. 2d at 448. In *Morgan*, as in our case, the jury was presented with only general verdict forms. *Morgan*, 197 Ill. 2d at 448. The supreme court found that "a general verdict finding a defendant guilty of murder, where the defendant was charged with intentional, knowing, and felony murder, raised the presumption that the jury found the defendant committed the most serious crime alleged, intentional murder." *Morgan*, 197 Ill. 2d at 448.

¶ 59    As a result, the *Morgan* court found that "we must presume that the jury found [the defendant] guilty of the most serious crime alleged, intentional or knowing murder, so that any error in instructing the jury on felony murder did not deprive [the defendant] of a fair trial." *Morgan*, 197 Ill. 2d at 448[6]; *People v. Davis*, 231 Ill. 2d 349, 358 (2008) (when the jury returns a general verdict form, the court will presume the most serious offense alleged).

¶ 60    The *Morgan* case is almost identical to the case before us. Even if we were to assume for argument's sake that defendant was correct that the vehicular invasion in this case was inherent in the act of murder itself, we would still have to presume that the jury's general verdict was for "the most serious crime alleged," namely, intentional murder, and that "*any error* in instructing the jury on felony murder did not deprive [the defendant] of a fair trial." (Emphasis

---

[6]Similarly, in *Smith*, 233 Ill. 2d at 20-21, the supreme court found: "where a defendant is charged with murder in multiple counts alleging intentional, knowing, and felony murder, and a general verdict of guilty is returned, the defendant is presumed to be convicted of the most serious offense—intentional murder—so that judgment and sentence should be entered on the conviction for intentional murder."

added.) *Morgan*, 197 Ill. 2d at 448. Since "any error" in instructing the jury on felony murder would not deprive defendant of a fair trial, all of defendant's claims relating to the felony murder instructions would fail for the same reason.

¶ 61                                    II. Vehicular Invasion

¶ 62    Defendant also argues that, even if the murder conviction survives, we must vacate his conviction for vehicular invasion.[7]

¶ 63    Defendant argues that, as charged in this case, the vehicular invasion was merely an immediate step in the commission of the murder, and thus his conviction for vehicular invasion violates the one-act, one-crime rule. Defendant argues that counsel's failure to object is not a bar to our review because, *first*, a violation of the one-act, one-crime rule constitutes plain error and, *second*, his counsel was ineffective for failing to object.

¶ 64    We set forth the plain error rule from *Piatkowski* above, and we will not repeat it again. *Supra* ¶ 45. Although defendant never brought the one-act, one-crime rule to the trial court's attention, he still may contest the matter on appeal because "it is well established that a one-act, one-crime violation affects the integrity of the judicial process" and thus amounts to plain error. *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009) (a one-act, one-crime violation "satisf[ies] the second prong of the plain-error test"). The application of the one-act, one-crime rule is a question of law that we review *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010).

¶ 65    Under the rule, a defendant may not be convicted of multiple offenses that are based upon precisely the same physical act. *Johnson*, 237 Ill. 2d at 97. If a defendant is convicted of two offenses based upon the same physical act, the conviction for the less serious offense must be vacated because it is error. *Johnson*, 237 Ill. 2d at 97.

¶ 66    In response to defendant's argument concerning the one-act, one-crime rule, the State argues that the elements of the offense—namely, the invasion with the intent to commit a murder—were complete in the seconds before the murder occurred, and thus the two offenses were premised on different acts—namely, (1) pulling the decedent out of the vehicle and (2) killing him.

¶ 67    In reply, defendant argues that, if the claimed predicate felony for felony murder—namely, vehicular invasion—was complete before the murder occurred, then there could have been no felony murder.[8] However, if the murder occurred during the commission of the vehicular

---

[7] Defendant's appellate brief also argues that "it was error to impose *** consecutive sentences—for both murder and vehicular invasion." However, section 5-8-4(d) of the Unified Code of Corrections provides that "[t]he court shall impose consecutive sentences in each of the following circumstances: (1) One of the offenses for which the defendant was convicted was first-degree murder ***." 730 ILCS 5/5-8-4(d)(1) (West 2008); see also *People v. Harris*, 203 Ill. 2d 111, 114-15 (2003). Thus, the trial court was required to impose a consecutive sentence for the vehicular invasion conviction.

[8] A person commits felony murder if he "kills an individual without lawful justification" and "in performing the acts which cause death *** he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9-1(a)(3) (West 2008). A forcible felony is defined as any "felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2-8 (West 2008). There is no dispute on this appeal that vehicular invasion qualifies as a forcible felony.

invasion, as the State claimed, then the one-act, one-crime rule prevents entry of multiple convictions and sentences.

¶ 68    The problem for the State is that it charged in the indictment that there was one continuous sequence of physical conduct, all for the same purpose—for the purpose of killing the decedent.[9] According to the indictment, the decedent was pulled out of the vehicle for the purpose of killing him, and thus being pulled out of the vehicle was inherent in the murder itself. *Cf. People v. Cherry*, 2014 IL App (5th) 130085, ¶ 20 (where the two aggravated batteries were "based on the same event," it was "patently unreasonable" to charge the defendant with both (1) armed violence predicated on aggravated battery causing great bodily harm and (2) aggravated battery with a firearm). This can be discerned more clearly when one considers that a defendant may be held accountable for an offense if he aided or abetted prior to the commission of the offense. *People v. Klebanowski*, 221 Ill. 2d 538, 550 (2006). If defendant had been accused solely of pulling the decedent out of the vehicle for the purpose of allowing someone else to shoot him, he could have been held accountable for the murder. *People v. Palmer*, 162 Ill. 2d 465, 485 (1994) (there is no "general rule that the defendant who strikes the fatal blow is the more culpable").

¶ 69    By charging in the indictment that defendant entered the vehicle "with the intent to commit *** first degree murder," the State left no doubt that the purpose of the invasion was to commit murder and that the invasion was merely a step in the murder itself, similar to cocking a gun. *Cf. People v McWilliams*, 2015 IL App (1st) 130913, ¶ 20 (where the unlawful restraint was a "single continuous" sequence of conduct that included ordering the victims to the ground, robbing them and then ordering them "to remain on the ground and count to 50," the restraint was "inherent in the armed robbery").

¶ 70    *Samantha V.*, 234 Ill. 2d at 380, is instructive on this point. In *Samantha V.*, our supreme court vacated one finding of guilty, where the defendant had been charged with both aggravated battery that caused great bodily harm and aggravated battery on a public way. *Samantha V.*, 234 Ill. 2d at 375-76. The State argued that both charges were permissible because there had been multiple batteries that resulted in multiple injuries. *Samantha V.*, 234 Ill. 2d at 376. However, our supreme court rejected that argument because the trial court had treated "the counts charged as being based on a single attack," and the charging document did not reflect an intent "to apportion the accused's conduct" into separate crimes. *Samantha V.*, 234 Ill. 2d at 377-78. Similarly, in the case at bar, by charging that the intent of the vehicular invasion was to commit the murder, the charging document reflected an affirmative intent *not* to apportion the accused's conduct into separate crimes.

¶ 71    Thus, we agree that the vehicular invasion conviction must be vacated. See *People v. Isunza*, 396 Ill. App. 3d 127, 134 (2009) (the appellate court rejected the State's argument that reaching into a vehicle and then striking the driver constituted separate acts that could support both vehicular invasion and aggravated battery, and thus it vacated one of the convictions); see also *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 55 (this court vacated a defendant's aggravated unlawful restraint conviction because the restraint was "inherent" in the armed

_____

[9]We observe that there is not one uniform approach to defining what acts constitute part of an offense. Thus, for example, the acts that a court will consider to be part of an offense will vary depending on whether the court is considering accountability or felony murder—even if it is the same offense. *Dennis*, 181 Ill. 2d at 105-06.

robbery where, after receiving money, the defendant placed a gun in the storeowner's mouth and said that he would shoot if the owner talked).

¶ 72     Our decision to vacate the vehicular invasion conviction is further supported by the supreme court's decision in *Smith*.

¶ 73     In *Smith*, the Illinois supreme court found "where a defendant is charged with murder in multiple counts alleging intentional, knowing, and felony murder, and a general verdict of guilty is returned, the defendant is presumed to be convicted of the most serious offense—intentional murder—so that judgment and sentence should be entered on the conviction for intentional murder." *Smith*, 233 Ill. 2d at 20-21. That is exactly what the trial court did in the case at bar. The trial court specified on the mittimus that defendant's conviction was for intentional murder.

¶ 74     However, the *Smith* court also held that specific verdict forms must be provided upon request if the different forms of first degree murder could have different sentencing consequences and that the failure to provide them is an abuse of discretion. *Smith*, 233 Ill. 2d at 23. In the case at bar, defense counsel made no such request or objection. On appeal, defendant argues that counsel was ineffective for failing to object to the proposed felony murder instructions.

¶ 75     Defendant would have been subject to different sentencing consequences if his murder conviction was for felony murder because then a conviction for the predicate offense of vehicular invasion would have been precluded. Our supreme court has found that "a conviction for felony murder requires a sentencing treatment not applicable to convictions based on intentional or knowing murder." *Smith*, 233 Ill. 2d at 17. "According to Illinois law, the predicate felony underlying a charge of felony murder is a lesser-included offense of felony murder." *Smith*, 233 Ill. 2d at 17. Thus, "a defendant convicted of felony murder may not be convicted on the underlying felony. In such instances, the predicate offense will not support a separate conviction or sentence." *Smith*, 233 Ill. 2d at 17.[10] In sum, a conviction for felony murder would have precluded a conviction for vehicular invasion, while a conviction for intentional murder both permitted it and mandated a consecutive sentence for it. See 730 ILCS 5/5-8-4(d)(1) (West 2008).

¶ 76     In light of (1) defendant's claims of ineffectiveness of counsel for failing to object to the instructions, (2) the fact that if counsel had requested separate verdict forms, the request would have likely been granted, and (3) the fact that a conviction for felony murder would have precluded the 10-year consecutive sentence that defendant received for vehicular invasion, *Smith* further supports our decision to vacate the vehicular invasion conviction.[11] While we do not base our decision solely on *Smith*, we observe that it provides additional support for it.

---

    [10]"[T]here are no such limitations if defendant is found guilty of intentional or knowing murder," as we presume in this case due to the general verdict form. *Smith*, 233 Ill. 2d at 17-18. This is why the separate conviction for vehicular invasion is not invalid.

    [11]Even if entering with the intent to murder and pulling the trigger could be considered separate chargeable acts, we would choose to exercise the discretion afforded to us by Illinois Supreme Court Rule 615 to vacate the vehicular invasion conviction. Ill. S. Ct. R. 615(b) ("On appeal the reviewing court may: *** (2) set aside, affirm or modify any or all of the proceedings *** [or] (4) reduce the punishment imposed by the trial court ***.").

¶ 77     For all the foregoing reasons, we order the vehicular invasion conviction vacated.

                          III. Defendant's Remaining Claims
¶ 78
¶ 79     We do not find defendant's remaining claims persuasive for the following reasons.
¶ 80     First, defendant argues that the State failed to establish his guilt beyond a reasonable doubt. When a reviewing court is presented with a challenge to the sufficiency of the evidence, it is not the reviewing court's job to retry the defendant. *People v. Givens*, 237 Ill. 2d 311, 334 (2010). Rather, we must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Davison*, 233 Ill. 2d 30, 43 (2009). Under this standard, a reviewing court must draw all reasonable inference from the record in favor of the prosecution. *Davison*, 233 Ill. 2d at 43. In addition, we must give due consideration to the fact that it was the trial court and the jury who observed and heard the witnesses. *People v. Young*, 128 Ill. 2d 1, 48 (1989).

¶ 81     Defendant argues that the State failed to prove his guilt beyond a reasonable doubt because the State's theory rested on a contradiction: that he killed his friend to retaliate for acts done by others, who the State was then unable to link to the decedent. In essence, defendant claims that the State's evidence was insufficient because its evidence of motive was insufficient. However, the State is under no obligation to prove motive. *People v. Anderson*, 2017 IL App (1st) 122640, ¶ 55 ("The State is not required to prove motive in order to convict the defendant of first degree murder."); *People v. Donahue*, 2014 IL App (1st) 120163, ¶ 123 ("the State has no obligation to prove a motive during a murder prosecution"); *People v. James*, 348 Ill. App. 3d 498, 509 (2004) ("the State has no obligation to prove motive"); *People v. Smith*, 141 Ill. 2d 40, 56 (1990) ("It has long been recognized by this court that motive is not an essential element of the crime of murder, and the State has no obligation to prove motive in order to sustain a conviction of murder.").

¶ 82     Defendant also argues that no witness identified him as the shooter. However, Maria Reyes stated both to the police and testified before the grand jury that, after she and the decedent returned to their vehicle in the bar's parking lot, defendant and another man pulled a drunk decedent out of the vehicle. Fingerprint evidence corroborated her statement, because defendant's fingerprints were found both inside and outside the vehicle's doors. Prior to trial, Reyes stated that she had observed something black in defendant's hand. Significantly, her signed pretrial statement stated that defendant "leaned towards [the decedent], and she saw him fire three shots in the direction of [the decedent]." Michael Silva testified at trial that, immediately after the murder, defendant jumped into a vehicle in which Silva was a passenger and stated: "F*** that n***" and "F*** him, he deserved it." Arturo Quevado, who described himself as a lifelong friend of defendant, confirmed at trial that, immediately after Quevado heard gunshots, defendant ran toward and jumped into a vehicle driven by Quevado in which Silva was also a passenger. The jurors had the opportunity to listen to defendant's testimony firsthand, and they heard him contradict both his friend Quevado and Silva. In addition, the State charged defendant, in part, based on accountability. Based on the above evidence, as well as all the evidence admitted at trial and the instructions given to the jury, we cannot find that no rational juror could have found defendant guilty beyond a reasonable doubt. See *Davison*, 233 Ill. 2d at 43.

¶ 83    Second, defendant claims it was error to allow the substantive admissions of witnesses' prior inconsistent statements. Specifically, he claims that Maria Reyes's and Arturo Quevado's memory lapses at trial violated his sixth amendment right to confrontation and that Reyes's memory lapse undermined the State's ability to lay a foundation for introduction of her prior statements.

¶ 84    Defendant acknowledges that he forfeited this issue and asks us to review it under both prongs of the plain error doctrine. *Supra* ¶ 45 (discussing the plain error doctrine). "The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial." *Sebby*, 2017 IL 119445, ¶ 49. We do not find a clear or obvious error here.

¶ 85    We must consider nonconstitutional issues before constitutional ones, so we turn to defendant's statutory argument first. *In re E.H.*, 224 Ill. 2d 172, 178 (2006) ("We have repeatedly stated that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort.").

¶ 86    Defendant argues, with respect to Maria Reyes only, that the State failed to meet the requirements to admit her prior written statement pursuant to section 115-10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1 (West 2008)). Evidentiary rulings are generally within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v. Johnson*, 385 Ill. App. 3d 585, 596 (2008). An abuse of discretion occurs only when the ruling is arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Johnson*, 385 Ill. App. 3d at 596.

¶ 87    Section 115-10.1 provides, in relevant part, that:
> "In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if
>> (a) the statement is inconsistent with his testimony at the hearing or trial, and
>> (b) the witness is subject to cross-examination concerning the statement, and
>> (c) the statement—
>> * * *
>> (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
>> (A) the statement is proved to have been written or signed by the witness, or
>> (B) the witness acknowledged under oath the making of the statement ***." 725 ILCS 5/115-10.1 (West 2008).

¶ 88    With respect to the above-quoted statute, defendant argues, first, that the State failed to prove that Reyes's pretrial statement had been "written or signed by the witness." See 725 ILCS 5/115-10.1(c)(2)(A) (West 2008). Defendant claims that the State failed to prove this fact because, at trial, Reyes did not recall meeting with the assistant state's attorney (ASA) who memorialized her statement. However, the above statutory section contains an "or." If the witness does not acknowledge the statement under oath, the statute gives the State the option of showing by other means that "the statement is proved to have been written or signed by the witness." 725 ILCS 5/115-10.1(c)(2)(A) (West 2008).

¶ 89    The State more than met its burden of proof on this point. At trial, Reyes testified that she recognized her signature which appeared at the bottom of every page of her six-page statement and appeared twice on the last page. Reyes also testified that she recognized her initials which

appeared on most of the pages. In addition, the ASA, who met with Reyes, testified in detail about her meeting with Reyes and the process by which the ASA had memorialized Reyes's statement. The ASA testified that Reyes "signed her signature at the bottom of each page to show it was true and correct." As a result, the trial court did not abuse its discretion in finding that "the statement is proved to have been written or signed by the witness," as required by the statute. 725 ILCS 5/115-10.1(c)(2)(A) (West 2008).

¶ 90    In addition, defendant argues that the State failed to satisfy the personal knowledge requirement of the statute. The above-quoted statute requires that the statement "narrates, describes, or explains an event or condition of which the witness had personal knowledge." 725 ILCS 5/115-10.1(c)(2) (West 2008). The statement itself, combined with the ASA's description of how the statement was created, demonstrates Reyes's personal knowledge of the events which the statement describes. In the statement, Reyes describes leaving the Green Dolphin bar, and how she entered the driver's seat of their vehicle, and how the decedent had a difficult time entering the passenger seat because he was drunk. Reyes then witnessed "two male Hispanics" approach the vehicle and pull the decedent out of it. One of the two men, whom Reyes identified from a photograph as defendant, grabbed the decedent and threw him on the ground. Reyes observed defendant with "something in his hand that was black." Reyes then stated that defendant "leaned towards [the decedent] and she saw him fire 3 shots in the direction of [the decedent]." The statement itself, combined with the ASA's description of how it was memorialized, establishes Reyes's personal knowledge of the events which she witnessed.

¶ 91    In support of his argument that Reyes lacked personal knowledge, defendant cites *People v. Simpson*, 2015 IL 116512. Defendant quotes *Simpson* as holding that a "prior inconsistent statement is not admissible unless the witness actually perceived the events that are the subject of the statement." *Simpson*, 2015 IL 116512, ¶ 32. Defendant argues that, since Reyes did not recall at trial either making the statement or the events it described, she lacked actual knowledge. However, both *Simpson* and the statute use the past tense. *Simpson* requires that the witness "perceived" (*Simpson*, 2015 IL 116512, ¶ 32), and the statute requires that the witness "had" knowledge (725 ILCS 5/115-10.1(c)(2) (West 2008))—both verbs are in the past tense. Defendant asks us to rewrite this particular sentence in the statute to read that the prior statement must describe an event of which the witness *presently has* personal knowledge. This we will not do.

¶ 92    Defendant also argues that it was error for the trial court to also admit Reyes's grand jury testimony because it was consistent with her pretrial statement, and the admission of a prior consistent statement is not allowed. However, consistency is measured against a witness's trial testimony, not against other admitted statements. For example, in *Johnson*, this court rejected almost the exact same argument that defendant makes here. *Johnson*, 385 Ill. App. 3d at 608. In *Johnson*, as in the case at bar, the State introduced a prior statement handwritten by an assistant state's attorney and signed by a witness, as well as prior testimony by the witness before the grand jury. *Johnson*, 385 Ill. App. 3d at 607. The *Johnson* defendant argued, as does defendant here, that the introduction of multiple prior inconsistent statements violated the rule against prior consistent statements. *Johnson*, 385 Ill. App. 3d at 608. This court rejected this same argument, stating that the defendant was "confusing apples with oranges, or more specifically, *inconsistent* statements with *consistent* ones." (Emphases in original.) *Johnson*, 385 Ill. App. 3d at 608. We explained: "Consistency is measured against a witness's trial

- 16 -

testimony; inconsistent statements are inconsistent with trial testimony; consistent statements are consistent with it." *Johnson*, 385 Ill. App. 3d at 608. We do not find defendant's argument any more persuasive now than we did almost a decade ago. *Johnson*, 385 Ill. App. 3d at 608; see also *People v. Maldonado*, 398 Ill. App. 3d 401, 423 (2010) ("We agree [with *Johnson*] and hold that the introduction of more than one statement that is inconsistent with a witness's trial testimony, whether or not such statements are consistent with each other, is proper."). We also decline defendant's request in his reply brief to find that our prior cases were wrongly decided.

¶ 93　　Since we do not find defendant's statutory arguments persuasive, we turn to his constitutional argument. Defendant argues that, with both Reyes and Quevado, their lack of recall impeded his ability to cross-examine them and thus violated his sixth amendment right to confront the witnesses against him. The confrontation clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend VI. The basic objective of the confrontation clause is to provide the accused with the opportunity to cross-examine. *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

¶ 94　　In 2004, the United States Supreme Court rejected prior confrontation clause rules and adopted a new confrontation clause analysis in *Crawford v. Washington*, 541 U.S. 36 (2004). *In re Rolandis G.*, 232 Ill. 2d 13, 24 (2008) (in 2004, the United States Supreme Court "overturned" prior rules and "devised a fundamentally new procedure for analyzing confrontation clause claims"). Thus, we rely here on *Crawford* and post-2004 cases.

¶ 95　　In *Crawford*, the United States Supreme Court held that a testimonial out-of-court statement is admissible under the sixth amendment only if the witness is available for cross-examination at trial or the defendant had a prior opportunity to cross. *Crawford*, 541 U.S. at 68. In the case at bar, there is no dispute that the statements at issue were both testimonial and made out of court, and that defendant had no prior opportunity to cross. Thus, they are admissible only if Reyes and Quevado are considered to have been available for cross-examination at trial.[12]

¶ 96　　"[W]hether a witness is available for cross-examination is a question to which our supreme court has applied the abuse-of-discretion standard of review generally applied to evidentiary questions." *People v. Burnett*, 2015 IL App (1st) 133610, ¶ 85 (discussing *In re Brandon P.*, 2014 IL 116653, ¶¶ 45, 47). A witness who is able to answer "both preliminary questions as well as a number of questions about the offense of conviction described in her statement" is generally found to be available under *Crawford*. *Burnett*, 2015 IL App (1st) 133610, ¶ 107; see also *Burnett*, 2015 IL App (1st) 133610, ¶ 106 (discussing *In re Brandon P.*, 2014 IL 116653, ¶ 47, and *In re Rolandis G.*, 232 Ill. 2d at 18).

¶ 97　　In the case at bar, defense counsel did, in fact, cross-examine Reyes, and elicited a number of facts that were helpful to the defense. For example, Reyes testified that she did not know who defendant was, that she had never observed him prior to coming to court that day, and that she did not remember ever observing him pull the decedent out of a vehicle at the Green Dolphin bar. Reyes testified that her memory was fresher back in 2009 than it was at trial, and she identified her own voice on a 911 tape from November 8, 2009, made shortly after the murder. She testified that the words on the tape were her words, that she had placed the call to

---

[12]The statute also required the trial court to find that "the witness is subject to cross-examination concerning the statement." 725 ILCS 5/115-10.1(b) (West 2008).

911, and that at no time during the 911 call did she state that there were two people present when the decedent was shot.

¶ 98    Thus, at trial, defendant was presented with an opportunity to cross-examine Reyes and he took it, and he used that opportunity to successfully elicit facts that were helpful to his defense. At trial, he made no objection about a lack of an opportunity to cross-examine, either after listening to Reyes on direct examination as she denied an ability to recall either the offense or her prior statements or after conducting a cross-examination of her. Trial counsel apparently made the strategic decision that the benefits of what counsel had just elicited on cross outweighed any prejudice resulting from Reyes' lack of recall. Only on appeal, after losing in the court below, did defendant make the claim that he had been denied an opportunity to cross-examine. We cannot find that the trial court erred when it chose not to, *sua sponte*, find that defendant had been denied an opportunity to cross-examine under *Crawford*. See *Johnson*, 385 Ill. App. 3d at 601 (the decision to question a particular witness about a particular subject is generally a matter of trial strategy, usually left to the trial counsel's discretion). Thus, we do not find persuasive defendant's claim that he lacked an opportunity to cross-examine Reyes.

¶ 99    As for Quevado, his recall was far more extensive. While he did not recall providing his grand jury testimony, he recalled many details concerning the night of the offense. Quevado testified that defendant, who was a lifelong friend, called Quevado that night to come "pick him up" because "he got into a fight." Quevado picked up defendant in the area of Ashland Avenue and Western Avenue and drove to a gas station, where defendant briefly exited the vehicle. Defendant reentered the vehicle with Michael Silva. Quevado testified that they drove to the vicinity of the Green Dolphin, where they parked nearby. They were four or five vehicles away from another vehicle which they were watching. Although Quevado testified that he did not recall if defendant exited the vehicle, he later testified that he observed defendant approaching the vehicle they were watching, and that there was a man laying on the ground with a woman nearby. Quevado then testified that he observed a man run out of an alley, towards the other vehicle with something shiny in his hands. Quevado then made a U-turn, and as he was making the U-turn, he heard gunshots and observed defendant running back toward his vehicle, which defendant entered. Silva was still in the backseat. Defendant gave Quevado directions to drive in a zigzag pattern, which Quevado did. With this level of detail, defendant had plenty of opportunity to cross-examine. Thus, we cannot find a sixth amendment violation with respect to Quevado either.

¶ 100    Third, defendant claims that the trial court erred by refusing a second degree murder instruction based upon sudden and intense passion resulting from a fight, which the State argued was defendant's motivation for the murder.

¶ 101    Our supreme court has recently found that, "when the trial court, after viewing all the evidence, determines that there is insufficient evidence to justify the giving of a jury instruction, the proper standard of review of that decision is abuse of discretion." *People v. McDonald*, 2016 IL 118882, ¶ 42.

¶ 102    The standard for determining whether a defendant is entitled to a second degree murder instruction is whether defendant identified some evidence in the record that, if believed by the jury, would reduce the offense to second degree murder. See *McDonald*, 2016 IL 118882, ¶ 25. The question is "not whether there is *some credible* evidence." (Emphasis in original.) *McDonald*, 2016 IL 118882, ¶ 25. "It is not the province of the trial court to weigh the

evidence when deciding whether a jury instruction is justified." *McDonald*, 2016 IL 118882, ¶ 25. Thus, the question is whether defendant identified some evidence.

¶ 103    It is the defendant who has "the burden of proving" that there is some evidence of serious provocation. *People v. Austin*, 133 Ill. 2d 118, 125 (1989); see also *People v. Ingram*, 409 Ill. App. 3d 1, 20 (2011). If the defendant fails to satisfy this burden, the trial court may deny his or her request for a second degree murder instruction. *Ingram*, 409 Ill. App. 3d at 20 (finding that the trial court did not err in refusing a second degree murder instruction where the "defendant failed to present any real evidence of serious provocation" by the victim); *Austin*, 133 Ill. 2d at 125 ("defendant has the burden of proving that there is at least 'some evidence' of serious provocation or the trial court may deny the instruction").

¶ 104    A person commits second degree murder when he or she commits first degree murder and either one of two mitigating factors exist. *McDonald*, 2016 IL 118882, ¶ 59. The first factor involves an unreasonable belief in self-defense. *McDonald*, 2016 IL 118882, ¶ 59. That factor is not at issue in the case at bar. The second mitigating factor is that, at the time of the killing, the offender was acting under a "sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed." 720 ILCS 5/9-2(a)(1) (West 2008); see also *McDonald*, 2016 IL 118882, ¶ 59. In the case at bar, neither party argues that defendant was endeavoring to kill "another." 720 ILCS 5/9-2(a)(1) (West 2008). Thus, to receive a second degree murder instruction, defendant had the burden of proving some evidence of a "serious provocation by the individual killed." 720 ILCS 5/9-2(a)(1) (West 2008).

¶ 105    "Serious provocation" is defined as "conduct sufficient to excite an intense passion in a reasonable person." 720 ILCS 5/9-2(b) (West 2008); see also *McDonald*, 2016 IL 118882, ¶ 59. The Illinois Supreme Court has recently stated: "The only categories recognized by this court to constitute serious provocation are [(1)] substantial physical injury or substantial physical assault, [(2)] mutual quarrel or combat, [(3)] illegal arrest, and [(4)] adultery with the offender's spouse." *McDonald*, 2016 IL 118882, ¶ 59. The last two categories, arrest and adultery, are not at issue in the case at bar. Since the provocation must be "by the individual killed" (720 ILCS 5/9-2(a)(1) (West 2008)), defendant had the burden of proving some evidence of a substantial injury or assault *by the decedent*, or mutual combat *with the decedent*. "Mutual combat is a fight or struggle that both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight *upon equal terms* and where death results from the combat." (Emphasis added.) *McDonald*, 2016 IL 118882, ¶ 59.

¶ 106    We cannot find that the trial court abused its discretion in denying a second degree murder instruction based upon a sudden passion resulting from an injury by or combat with the decedent, where defendant took the stand at trial and denied engaging in any fight with the decedent or having any passion toward him on the night of the murder. See 720 ILCS 5/9-2(a)(1) (West 2008) (the defendant has the burden of showing a "sudden and intense passion resulting from serious provocation by the individual killed"). In addition, the State's evidence showed that the drunk decedent was dragged out of his vehicle before being shot. This also does not support defendant's claim that defendant was acting under a "sudden" passion from a "provocation" by the decedent (see 720 ILCS 5/9-2(a)(1) (West 2008)) or that there was a "fight upon equal terms" (*McDonald*, 2016 IL 118882, ¶ 59).

¶ 107 For these reasons, we do not find defendant's remaining claims persuasive.

¶ 108 CONCLUSION

¶ 109 We have carefully reviewed and considered all of defendant's claims. For the foregoing reasons, we affirm his conviction and 55-year sentence for first degree murder but vacate his conviction and 10-year sentence for vehicular invasion.

¶ 110 Affirmed in part and vacated in part.